**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHAYN STEPHENS, et al., )<br>)<br>   Plaintiffs, )<br>)<br>v. )<br>)<br>FARMERS RESTAURANT )<br>GROUP, et al., )<br>)<br>   Defendants. )<br>_____ ) | CIVIL ACTION 1:17-cv-01087-RMC<br><br>JURY TRIAL DEMANDED |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL**
**CERTIFICATION AND NOTICE TO PUTATIVE PLAINTIFFS**

**I.      INTRODUCTION**

Plaintiffs have demonstrated through detailed declarations that they are similarly situated to other employees in that they have been deprived of pay in the same and similar manner to other employees of defendants in violation of the Fair Labor Standards Act (FLSA), and that this matter should proceed as a collective action pursuant to the FLSA., 29 U.S.C. § 216(b). Docket Entry ("DE") 13, 14. Despite this, defendants assert that plaintiffs presented "virtually no evidence that their alleged claims are similar to each other, let alone to the thousands of people they seek to represent." DE 22 at 2. In addition, defendants repeatedly contend – without presenting any evidence whatsoever – that plaintiffs' claims are meritless and, curiously, argue that regardless of whether they are violating the FLSA in underpaying its employees, there is a lack of interest in joining this lawsuit because the defendants' company is supposedly much beloved by its employees. [1] *Id.*

_____

[1]      Of course, any money that defendants fail to pay its workers, as required by law, not only ends up in the pockets of defendants' owners rather than their low wage employees, it also provides defendants with a competitive advantage over other restaurants in the area who actually comply with the FLSA because defendants have lowered their labor costs below what the law

Defendants' arguments ignore established law. It has long been established that any arguments regarding factual conflicts or the merits of plaintiffs' claims are inappropriate at this initial stage of collective action certification. Collective treatment is proper here because all plaintiffs and putative class members are subject to the same policies that run afoul of the FLSA at all of defendants' restaurants. Moreover, any minor factual differences are not relevant as the statute does not require that employees be *identically* situated, but only that they are "similarly situated." *See McKinney v. United Stor-all Ctrs., Inc.*, 585 F. Supp. 2d 6, 9 (D.D.C. 2008). Defendants' arguments regarding the content of the proposed notice, including those regarding the length of the opt-in period, and the form of the notice, are also contrary to law.

Defendants attempt to sway this Court by alleging that plaintiffs are predatory for targeting such a well-meaning and well-respected brand. *See* DE 22 at 4. Although it certainly is not an undisputed fact that defendant is a well-respected, well-meaning brand, [2] this court need not resolve that dispute because it is utterly immaterial to whether defendant has been unlawfully depriving its employees of pay to which they are entitled under federal law's basic labor standards and it is also entirely irrelevant as to whether plaintiffs are similarly situated. Simply put, the fact that some people may enjoy defendants' restaurants does not give the defendants the

---

requires. *See, e.g., Donovan v. Grantham,* 690 F.2d 453, 456 (5th Cir. 1982) (purpose of FLSA accomplished "by protecting those employers who comply with the Act's wage requirements from the unfair competitive advantage which would otherwise be enjoyed by noncomplying employers); *Herman v. Fashion Headquarters,* 992 F. Supp. 677, 679 (S.D.N.Y. 1998) (one of the purposes of the FLSA is to prevent the introduction of "hot goods" produced in violation of the FLSA into the stream of commerce, because they provide a competitive advantage to manufacturers and a comparative disadvantage to law-abiding companies).

[2]      *See* Tom Siestema, "Founding Farmers review: Zero stars for the mega-popular D.C. eatery, *The Washington Post* (Jun. 8, 2016), *available at* https://www.washingtonpost.com/lifestyle/food/founding-farmers-review-where-the-biggest-temptation-is-to-leave/2016/06/01/76b2c844-204e-11e6-9e7f-57890b612299_story.html?utm_term=.9087c5360e80.

right to violate federal and state wage and hour laws. Further, it is immaterial whether the

defendants are inconvenienced by the fact that plaintiffs highlight the myriad ways in which the

defendants routinely violate their employees' rights, instead of selectively choosing only "one or

two discrete wage and hour violations" to allege. DE 22 at 2.

Defendants are wrong that plaintiffs advance ten separate claims. Instead, plaintiffs bring

three distinct claims – failure to provide the minimum wage, overtime compensation, and paid

sick leave. More importantly, plaintiffs are not required to ignore many of defendants' numerous

illegal policies and practices in order to make the case simpler for the defendants. To the

contrary, it is precisely because of defendants' rampant violations of federal and District of

Columbia law that collective action certification and issuance of court-supervised notice are

necessary to vindicate the rights of defendants' workers. Accordingly, this Court should grant

plaintiffs' Motion.

## II.     LEGAL ANALYSIS

### A.  Defendants' Arguments as to the Merits of Plaintiffs' Claims are Inappropriate at this Stage

Defendants spend the majority of their brief raising factual issues that they believe should

defeat plaintiffs' minimum wage and overtime claims on the merits. DE 22. For example,

defendants urge the Court to deny plaintiffs' motion because the policies that the plaintiffs assert

result in myriad violations of the FLSA and the D.C. Code – including the policy requiring

plaintiffs to purchase a uniform; clean and starch their uniforms; purchase pens, lighters, and

other pieces of equipment – do not exist. DE 22 at 9-14. Defendants attempt to support their

assertions with affidavits by one of the named defendants, as well as two random management

employees. DE 22-1, 22-3, 22-4. Specifically, named defendant Dan Simons states in a

conclusory manner that "[e]ach restaurant's policy is to pay each employee for all hours

worked," and "to pay each non-exempt employee overtime for all hours over 40 worked in any workweek." DE 221., ¶¶ 20-21. Further, defendants purport to rely on an affidavit from the Director of Accounting Operations to demonstrate that plaintiff Shayn Stephens has always been properly provided with compensation when she worked at two different restaurants during the same week. DE 22 at 20, 24; DE 22-2.  The defendants also argue, by way of declaration, that certain plaintiffs were allegedly ineligible for paid sick leave under District of Columbia law. DE 22 at 20, 24; DE 22-2.

However, "[a]t this stage [of conditional certification], district courts should ordinarily refrain from resolving factual disputes and deciding matters going to the merits." *Dinkel v. Medstar Health, Inc.*, 880 F. Supp. 2d 49, 53 (D.D.C. 2012); *see also Adams v. Citicorp Credit Servs.*, 93 F. Supp. 3d 441, 454 (M.D.N.C. 2015) ("At this first stage of [FLSA collective action] certification . . . the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations."); *Blount v. U.S. Sec. Assocs.,* 945 F. Supp. 2d 88, 94 (D.D.C. 2013); *Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 825 (D. Md. 2012) (reasoning that 'the court does not weigh the merits" of the plaintiffs' claims at this early stage). Accordingly, defendants cannot defeat plaintiffs' Motion for Conditional Certification simply by presenting evidence that allegedly rebuts plaintiffs' claims or a declaration with the conclusory assertion that the defendants comply with the law requiring them to provide proper minimum wage and overtime compensation, as well as paid sick leave within the District of Columbia.

**B.  Minor Factual Variations Do Not Negate That Plaintiffs and the Putative
Collective Are Similarly Situated**

Plaintiffs have easily made the modest factual showing required to demonstrate that they

are similarly situated to each other and to the putative class. *McKinney,* 585 F. Supp. 2d at 9

(plaintiffs must make only a "modest factual showing sufficient to demonstrate that they and

potential plaintiffs together were victims of a common policy or plan that violated the law").

"Indeed, all that is needed is some evidence, beyond pure speculation, of a factual nexus between

the manner in which the employer's alleged policy affected [a plaintiff] and the manner in which

it affected other employees." *Ayala v. Tito Constrs.*, 12 F. Supp. 3d 167, 170 (D.D.C. 2014)

(internal quotations omitted). Plaintiffs in an FLSA case can make this showing through

pleadings and affidavits that demonstrate allegations of class-wide illegal practices. *Id.* at 8.

While defendants repeatedly mention that plaintiffs "assert ten distinct wage and hour

violations," this is simply untrue. Plaintiffs bring only three claims: violation of minimum wage,

overtime, and paid sick leave laws. *See* DE 5 (Amended Complaint); DE 14 at 4. The numerous

factual assertions in plaintiffs' Amended Complaint that defendants reference simply illustrate

some, but not all, of the varying ways in which the defendants have failed to properly

compensate their workers in violation of the FLSA and District of Columbia law. Through their

declarations, plaintiffs have demonstrated that they are all subject to the same unlawful pay

policies and practices. DE 14 at 4; DE 14-2-DE 14-8. Specifically, plaintiffs have demonstrated

that defendants have a common policy, implemented at all five restaurants, of violating the

minimum wage provisions of the FLSA and the District of Columbia Minimum Wage Act

("DCMWA") by failing to abide by the tip credit rules, by: (1) requiring plaintiffs and all others

similarly situated to purchase and launder uniforms; (2) requiring plaintiffs and all others

similarly situated to purchase tools of the trade; (3) requiring plaintiffs and all others similarly

situated to participate in an unlawful tip pool which is shared with non-tipped works; (4) paying

the plaintiffs and all others similarly situated at the tipped wage for hours spent performing non-

tipped work; and (5) failing to pay plaintiffs and all others similarly situated any wages for pre-

shift meetings and required homework. *Id.* Plaintiffs also have demonstrated that defendants

maintain a uniform policy of violating the overtime provisions of the FLSA and the DCMWA by

failing to aggregate hours of work when the plaintiffs work at more than one restaurant and by

failing to include all hours worked – in particular, time spent in pre-shift meetings and

performing mandatory homework – for purposes of calculating overtime. *Id.* Finally, plaintiffs

have demonstrated that defendants maintains an across-the-board policy of failing to provide

paid sick leave to employees pursuant to District of Columbia law. *Id.*

Further, defendants do not dispute that bartenders and "other wait staff" – e.g., bussers –

are subject to the same policies and practices as servers; indeed, defendants readily admit that

bartenders must participate in the same illegal tip pool as the servers. DE 22 at 22-23.

Accordingly, as a result of the common policies and similar legal issues presented as to

minimum wages, overtime, and paid sick leave, servers, bartenders, and bussers are all similarly

situated. *See, e.g., Mendoza v. Mo's Fisherman Exch., Inc.*, 2016 U.S. Dist. LEXIS 81764, *51-

52 (D. Md. Jun. 22, 2016) (certifying collective action for all hourly restaurant staff at six

restaurants near Baltimore because "[p]laintiffs do not have to show that the potential class

members have identical positions for conditional certification; plaintiffs can be similarly situated

even though there are distinctions in their job titles, functions, or pay" and because "opt-in

plaintiffs need not necessarily occupy the same position as the initial plaintiff").

While defendants argue that plaintiffs are not similarly situated because of certain trivial

factual differences, such as that the cost of cleaning plaintiffs' uniforms may vary (DE 22 at 12),

6

or that plaintiffs may be required to polish different types of kitchen items at the end of their shifts, (DE 22 at 14-15), these arguments are entirely unavailing. Minor factual differences in plaintiffs' claims do not negate that plaintiffs are similarly situated. *See, e.g., Mendoza*, 2016 U.S. Dist. LEXIS 81764, at *50-52 (minor inconsistencies such as rates of pay, duration of tenure, or location at which restaurant employee plaintiffs work do not amount to a conclusion that plaintiffs are dissimilar); *Goodman v. Burlington Coat Factory,* 2012 U.S. Dist. LEXIS 166910, *36 (D.N.J. Nov. 20, 2012) (declining to consider 38 declarations submitted by defendant that "show individual differences among [plaintiffs'] job duties," finding "that this inquiry necessarily addresses the merits of Plaintiffs' claim and is therefore premature"); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 813 (M.D. Tenn. 2008) (plaintiffs are all similarly situated, despite variation in specific job tasks, because "they are all meat processing plant employees"). The key policy violation is that defendants pay the employees the lower tip credit rate for hours spent doing side work and preparation work when the servers cannot earn any tips.  Minutia such as whether they are sweeping floors, polishing knives, or polishing forks during this non-tipped time is not relevant.

Similarly, defendants' argument that the named plaintiffs are not similarly situated because some plaintiffs are allegedly ineligible for paid sick leave under District of Columbia law due to the length of their employment, DE 22 at 24-25, is a factual distinction that is inappropriate for the court's consideration. Dates of employment do not render the plaintiffs dissimilar. *See, e.g., Hallisey v. Am. Online, Inc.*, 2008 U.S. Dist. LEXIS 18387, *5 (S.D.N.Y. Feb. 19, 2008) ("While dates of employment . . . are unique to each employee, it does not necessarily create dissimilarity under the FLSA.") (citing *Mentor v. Imperial Parking Sys., Inc.*,

246 F.R.D. 178, 181 (S.D.N.Y. 2007)). The essential factor is that plaintiffs' have demonstrated a uniform policy under which the defendants fail to provide paid sick leave.

This Court held in *Blount* that conditional certification was appropriate as to plaintiffs' claim that the defendant maintained an unlawful unpaid meal period policy, although the policy may have affected the putative plaintiffs in different ways. *Blount,* 945 F. Supp. 2d at 95. Specifically, the court held it was irrelevant that the duration and number of actual interruptions to the guards' meal periods differed from person to person, that meal periods may be scheduled differently at different schools, and that putative plaintiffs reported their time in different ways. The court found this irrelevant because "**the focus of plaintiffs' claims is the underlying policy**." *Id.* (emphasis added). The court explained that the "case, then, is about a uniformly applied, allegedly unlawful policy, not a policy alleged to be unlawful because of how it was applied." *Id.*

Here, the situation is exactly the same as in *Blount*. Plaintiffs allege that defendants maintained unlawful pay policies by violating the tip credit rules in requiring plaintiffs and putative class members to purchase tools of the trade, to purchase uniforms, by implementing an unlawful tip pool in requiring plaintiffs to share tips with employees who should never have been in the tip pool (e.g., pastry chefs), and by paying tip credit wages for hours of work in which plaintiffs performed activities in which they could not earn tips. Plaintiffs also allege that defendants violated the minimum wage and overtime laws by suffering and permitting plaintiffs to work off the clock and by failing to pay overtime for all hours worked above 40 in a workweek at the proper overtime pay rate.  Further, plaintiffs allege that defendants violated District of Columbia law by failing to provide paid sick leave. *See generally* DE 5, 14. Thus, minor factual distinctions in how these uniformly applicable policies and practices violated the

FLSA with respect to their application to each individual plaintiff bear no relevance at this stage as to whether plaintiffs are similarly situated.

### 1. *Defendants' Restaurants are Similar Because They Apply the Same Illegal Wage and Hour Policies and Practices*

Defendants argue that plaintiffs are not similarly situated because the five restaurants in which they work – Founding Farmers DC, Farmers Fishers & Bakers, Farmers & Distillers, MoCo's Founding Farmers, and Founding Farmers Tysons – are different in that they: have different menu items (DE 22-1, ¶ 8, 10); have different operating hours resulting from whether they offer brunch or breakfast (DE 22-1, ¶¶ 8-9, 12); and have a different volume of business (DE 22-1, ¶¶ 6-7). *See also* DE 22 at 5-7.

Defendant fails to explain how these types of differences have any bearing on whether defendants have adopted and applied policies with respect to its wait staff that violate the FLSA. Under defendants' theory, it would be impossible to maintain a collective action involving more than one location; this is clearly not the intention of law, as courts routinely certify nationwide and multi-state collective actions involving minimum wage and/or off-the-clock claims, including those brought on behalf of restaurant workers. *See, e.g., Black v. P.F. Chang's China Bistro, Inc.*, 2017 U.S. Dist. LEXIS 73322, *41 (N.D. Ill. May 15, 2017) (conditionally certifying collective action for tipped workers at restaurants in Illinois and New York); *Gunn v. NPC Int'l, Inc.*, 2016 U.S. Dist. LEXIS 172059, *20-23 (W.D. Tenn. Dec. 13, 2016) (conditionally certifying collective action for servers at Pizza Hut restaurants nationwide); *Flood, et al. v. Carlson Restaurants Inc., et al.*, 2015 U.S. Dist. LEXIS 6608, *2-3 (S.D.N.Y. Jan. 20, 2015) (granting conditional certification and notice to current and former tipped workers, including servers, bussers, runners, bartenders, barbacks, and hosts, employed at T.G.I. Friday's restaurants nationwide); *see also Garcia v. Nunn,* 2016 U.S. Dist. LEXIS 39188, *3-4 (E.D. Pa.

Mar. 25, 2016) (conditionally certifying nationwide collective action of grocery store janitors);

*Shaia v. Harvest Mgmt. Sub LLC,* 306 F.R.D. 268, 272-74 (N.D. Cal. 2015) (conditionally

certifying nationwide collective action of retirement community chefs); *Winfield v. Citibank,*

*N.A.,* 843 F. Supp. 2d 397, 411 (S.D.N.Y. 2012) (conditionally certifying nationwide collective

action of "personal bankers"); *Thompson v. Bruister & Assocs.,* Case No. 3:07-cv-00412, Dkt.

148 (M.D. Tenn. Mar. 11, 2008) (conditionally certifying multi-state collective action for

satellite dish installers).

In fact, the differences cited by the defendants are not only minor but also completely

superficial. Plaintiffs are similarly situated if they are subject to a "common policy or plan that

violated the law." *See, e.g., Blount,* 945 F. Supp. 2d at 92 (quoting *Hunter, et al. v. Sprint Corp.,*

346 F. Supp. 2d 113, 117 (D.D.C. 2004)). Such is the case here; indeed, defendants admit that all

five of their restaurants, all located in the District of Columbia metro area, are "united under a

single overarching 'farm family' guiding philosophy." DE 22 at 5. In addition, named defendant

Simons admits that he is an owner at Farmers Restaurant Group, LLC, which operates the five

restaurants at issue in this case. DE 22-1, ¶ 1. Moreover, plaintiffs specifically declared that the

same wage and hour policies apply at all five restaurants, demonstrating that employees at all

five restaurants are similarly situated. *See, e.g.,* DE 14-2, ¶ 2 ("When I worked at [Farmers &

Distillers and MoCo's Founding Farmers], the same policies applied to me at both restaurants.");

DE 14-3, ¶ 2 ("When I worked at [Farmers & Distillers and Founding Farmers DC], the same

policies applied to me at both restaurants."); DE 14-6, ¶ 2 ("When I worked at Farmers &

Distillers and Farmers Fishers Bakers], the same policies applied to me at both restaurants).

Distinctions such as that some restaurants might serve brunch, or have a more extensive happy

hour, or serve different food items, are insufficient to demonstrate that plaintiffs are not similarly situated or to otherwise defeat plaintiffs' motion.

### 2. *Defendants Misunderstand the Tipped Wage Rules*

Defendants' other argument that plaintiffs are not similarly situated appears to rely upon an incorrect understanding of the FLSA's tipped wage rules. Specifically, defendants argue that collective action certification is inappropriate because an individualized inquiry will be necessary because not all plaintiffs were paid at the same tipped-credit-rate because the defendants' restaurants are not all located in the same state. DE 22 at 11-15. Defendants argue, therefore, that whether they violated the FLSA and District of Columbia Law turns on facts such as the cost of plaintiffs' uniforms and the required equipment and/or tools, as well as the specific type of non-tipped side work plaintiffs may be performing. *Id.*

This is simply false. An employee for whom an employer takes the tip credit – i.e., an employee to whom the employer is paying some amount below the minimum wage – is considered to be paid the minimum wage, and an employee who is paid the minimum wage cannot be required to pay for any tools of the trade or uniforms because by doing so that employee will fall below the minimum wage. This is true regardless of the amount of tips an employee receives or how far below the minimum wage the employer has paid the employee as a tip credit. This is because under the FLSA, an employee for whom the employer claims the tip credit is considered to be paid the minimum wage regardless of the amount of tips the employee receives, and if that employee pays for his or her uniform or any tools of the trade, by virtue of that payment, the employee has failed to receive the minimum wage required by law.

29 U.S.C. § 203(m) defines a tipped employee's wage rate as:

> the cash amount paid (at least $2.13 an hour) plus an amount of tips
> sufficient to bring the employee to the minimum wage. Thus, **even**

**if the tips actually received exceeded the maximum tip credit the employer needs to claim toward payment of the minimum wage,** these excess tips are not deemed to be wages for purposes of the FLSA. Therefore, **the server paid $2.13 an hour in direct wages would still be considered to be paid no more than the minimum wage.**

WH Admin. Op. FLSA 2006-21 at 3 (Jun. 9, 2006) (emphasis added). For an employer to properly utilize the "tip credit," an employee must receive his tips free and clear. WH Admin. Op. (Nov. 22, 1978). That is, if an employer requires its employees to deduct from their wages the cost of items not considered "board, lodging, or other facilities" – such as tools of the trade and the cost of uniforms – the employee's wages will be brought below the minimum wage rate by virtue of the deduction and regardless of the amount of tips the employee actually earns. WH Admin. Op. FLSA 2006-21 at 3 (Jun. 9, 2006). Thus, the violation does not turn on whether the employees were paid $2.77 per hour in the District of Columbia or $2.13 an hour in Virginia as defendants would have the Court believe, but instead on whether the employer required its employees to spend their wages on mandatory, work-related expenses. Because plaintiffs have alleged through their sworn declarations that defendants' policies required them to purchase uniforms and tools, and to pay to launder their uniforms, they have demonstrated that their wages were brought below the applicable minimum wage rate. *See* DE 14 at 15. Therefore, no individualized inquiry will be required to resolve liability for this aspect of plaintiffs' minimum wage claim.

Similarly, defendants ignore their company-wide policy requiring plaintiffs to perform non-tipped side work for tipped wages and instead focus on the specific, discrete tasks that plaintiffs performed during this non-tipped time. Specifically, defendants attempt to distinguish plaintiffs by noting that some plaintiffs are required to polish silverware, while others are required to polish silverware *and* bullets and ramekins. DE 22 at 14. Defendants focus on minor

variations in work that are legally meaningless distinctions. As noted above, defendants maintain a policy requiring their employees to regularly perform non-tipped work for the tipped wage; this is the essential policy at issue. *See, e.g., Blount*, 945 F. Supp. 2d at 92. Plaintiffs have sufficiently alleged the existence of such a policy, so they are therefore similarly situated in how defendant violates the FLSA.

Further, defendant's argument that plaintiffs are not similarly situated because they allegedly contribute different percentages of their sales to the tip pool, or that bartenders do not "contribute" to these tip pools, misunderstands not only plaintiffs' allegations, but the requirements of a lawful tip pool. Federal and District of Columbia law prohibit tips from being redistributed, or shared, among employees who do not customarily and regularly receive tips. 29 C.F.R. § 531.54; D.C. Code § 32-1003(g). Thus, plaintiffs did not allege that they were required to *contribute* to an unlawful tip pool, but instead that they were required to *participate* in one. Plaintiffs' Amended Complaint specifically states: "[d]efendants have also deprived plaintiffs and other similarly situated employees of the minimum wage by **requiring plaintiffs to share tips and gratuities** with employees who would not customarily or regularly receive tips and gratuities, including their managers." DE 5, ¶¶ 55, 64(h) (emphasis added). Thus, the fact that bartenders receive tips from the tip pool, while the servers contribute to it, is a meaningless distinction. Because both servers and bartenders are required to **share their tips** with employees who do not customarily or regularly receive tips in violation of the law, they are similarly situated.

Defendants also attempt to claim that plaintiffs are not similarly situated because they have to share tips with different types of workers, and that plaintiffs have "changed th[eir] allegation" regarding the individuals with whom plaintiffs were unlawfully required to share tips.

DE 22 at 21. However, this mischaracterizes plaintiffs' allegations. While plaintiffs allege that *one of the* groups of individuals with whom defendants required plaintiffs to share tips is managers, they did not allege that it is limited to managers. DE 5, ¶ 55. As noted in their declarations, plaintiffs also had to share tips with pastry workers and stockers, "employees who would not customarily or regularly receive tips." DE 14 at 18-19. Because defendants' policy requires plaintiffs to share tips with employees who do not customarily or regularly receive tips – be they pastry workers, stockers or managers – plaintiffs are similarly situated. *Blount,* 945 F. Supp. 2d at 92 (plaintiffs are similarly situated if they are the subject to a "common policy or plan that violated the law").

### 3. *Defendants Misunderstand the Rules Regarding Compensability of Homework*

Defendants also attempt to defeat plaintiffs' motion by arguing that plaintiffs are not similarly situated with regard to off-the-clock homework time because plaintiffs are not entitled to be paid for the time spent, after regular working hours, performing mandatory homework.[3] DE 22 at 23.  In making this argument, defendants cite only to decades-old Department of Labor Wage & Hour opinions stating that homework is compensable only if it is required to pass a test. *Id.* (citing to opinions from 1971 and 1980). Defendants completely ignore the Department of Labor's most recent guidance on this topic; in 2009, the Department of Labor issued a new opinion making clear that time spend studying and/or completing homework outside of scheduled work hours is compensable **if it is a required part of the training or is otherwise**

---

[3]     Defendants also argue that plaintiffs assert for the first time that they are bringing overtime claims for time spent performing homework. DE 22 at 18. However, as explained *supra,* plaintiffs bring a single claim for unpaid overtime (under the FLSA and under District of Columbia law). Plaintiffs' Amended Complaint makes clear that the "claims" defendants discuss are instead various examples of the ways in which the defendants failed to properly compensate their employees for overtime worked. *See generally,* DE 5.

**required by the employer.** *See* Dep't of Labor, Wage & Hour Op. Letter, FLSA2009-15 (Jan. 15, 2009) (emphasis supplied); *see also Almanza v. United States,* 127 Fed. Cl. 521, 526 (2016) (studying for training course is compensable work if employees are "directed to participate in training" and the "purpose of the training [is] to improve [their] performance of the duties and responsibilities of [their] current position") (citing 5 C.F.R. § 551.423). Thus, here, where plaintiffs allege that they were required to complete homework assignments during their mandatory training, or be prohibited from participating in the mandatory training, DE 14 at 19, defendants' conclusory statement that "Named Plaintiffs themselves have no valid homework claims so it would be 'senseless' to invite hundreds of others to join this lawsuit," DE 22 at 23, is unnecessarily inflammatory and incorrect.

### 4. Defendants' Arguments Address Matters Related to Damages, Not Liability

Defendants repeatedly argue against plaintiffs' motion by asserting that an individualized inquiry is required to analyze plaintiffs' claims. However, the "individualized inquiries" that defendants purport exist relate only to *damages,* not to liability. It is well established that differences in damages do not prevent conditional certification. *See Grosscup v. KPW Mgmt., Inc.*, No. 16 C 06501, 2017 U.S. Dist. LEXIS 87014, *28 (N.D. Ill. Jun. 7, 2017) (granting conditional certification of collective action for tipped servers and bartenders in Illinois and Maryland, noting "the detailed parsing of which hours were worked by whom and how much of that time was spent on related versus unrelated work is most relevant to damages"); *Butler v. DirectSAT USA, LLC,* 47 F. Supp. 3d 200, 309 (D. Md. 2014) (differences in plaintiffs' hours of work, the underreporting of hours, and plaintiffs' motivations for working off-the-clock "go more toward damages than liability"); *Thompson v. Bruister & Assocs.,* 967 F. Supp. 2d 1204, 1215 (M.D. Tenn. 2013) (quoting *Espinoza v. 953 Assocs. LLC,* 280 F.R.D. 113, 130 (S.D.N.Y.

2011)) ("Although plaintiffs' claims may raise individualized questions regarding the number of

hours worked and how much each employee was entitled to be paid, those differences go to the

damages that each employee is owed, not to the common question of Defendant's liability.");

*Johnson v. Big Lots Stores, Inc.*, 2007 U.S. Dist. LEXIS 96151, *31-32 (E.D. La. Aug. 21, 2007)

(conditionally certifying collective action because defendants' alleged individual defenses

relating to each plaintiffs' work experiences "go to the amount of damages due to each plaintiff

for unpaid overtime. The need for this type of straightforward inquiry is not sufficient to defeat

the propriety of a collective action.").

    For example, the defendants highlight that plaintiffs may have earned wages at different

rates or worked different hours depending on whether they worked at defendants' restaurants in

the District of Columbia, Maryland, or Virginia. *See* DE 22 at 5-6, 11. Similarly, defendants note

that plaintiffs' overtime claims – specifically with regard to whether they performed off-the-

clock work by attending pre-shift meetings or performing mandatory homework – require an

inquiry into the hours actually worked by the plaintiffs. DE 22 at 17-19. These types of inquiries

will not defeat conditional certification. Of course, certain individual circumstances are

inevitably present in a collective action, but minor differences in time and wage calculations,

particularly where the putative class members hold similar positions and fall under a single

management structure, will not defeat a motion for conditional certification. *See Flores v. Unity*

*Disposal & Recycling, LLC*, 2015 U.S. Dist. LEXIS 43889, *13-14 (D. Md. Apr. 2, 2015) (minor

differences in time and wage calculations where the putative class members hold similar

positions, work in the same geographic area, and fall under a single management structure, will

not defeat a motion for conditional certification); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp.

3d 463, 473 (E.D. Va. 2014) (because "the existence of varied circumstances leading to off-the-

clock work does not undermine the core issue of whether a practice of allowing unpaid off-the-clock work existed"); *Blount,* 945 F. Supp. 2d at 96 (rejecting defendants' threats that the court will need to make individualized determinations as to the frequency and duration of interruptions to each plaintiff's meal break and instead conditionally certifying a collective action regarding defendants' company-wide unpaid meal break policy). Where, as here, plaintiffs challenge only the defendants' unlawful policies and practices regarding minimum wages, overtime, and paid sick leave, conditional certification is appropriate.

### 5.   *Plaintiffs are Similarly Situated to <u>All</u> Putative Class Members*

Defendants' claim that plaintiffs are not similarly situated to putative class members employed before September 24, 2015, because none of the representative plaintiffs have personal knowledge of the policies in place before that time is disingenuous. DE 22 at 26. Importantly, defendants provide no support for this assertion. As the defendants are well aware, the statute of limitations for willful violations of the FLSA is three years. 29 U.S.C. § 255(a). Similarly, the statutes of limitations for violations of the District of Columbia Minimum Wage Act and the D.C. Sick Leave Act are three years. D.C. Code § 32-1308(c)(1). Defendants must not be allowed to artificially shorten the statutory limitations period, prohibiting hundreds of employees from vindicating their rights through joining this lawsuit.

Further, defendants have provided no evidence demonstrating that the policies and practices enumerated in plaintiffs' Amended Complaint and their sworn declarations for the time period beginning September 24, 2015, were not in existence, or were somehow different, prior to that time. *See* DE 22 at 26. Accordingly, plaintiffs' individual dates of employment have no bearing on whether plaintiffs are similarly situated to the putative class. *See, e.g., Hallisey,* 2008 U.S. Dist. LEXIS 18387 at *5 ("While dates of employment . . . are unique to each employee, it

does not necessarily create dissimilarity under the FLSA.") (citing *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)).

### C. The Purpose of Conditional Certification is to Provide Putative Plaintiffs Notice of the Lawsuit and an Opportunity to Join; The On-Line Washington Post Article is Not Court-Supervised Notice

Defendants repeatedly assert that the lack of opt-ins at this stage demonstrates that plaintiffs' lawsuit is meritless. DE 22 at 5 n.3, 27. Yet, defendants' assertions are wildly speculative and wholly unfounded. In fact, contrary to the defendants' assertions, plaintiffs *did* present evidence that putative class members are interested in joining the lawsuit; four opt-in plaintiffs have already joined. *See* DE 9; DE 14 at 13 n.6; *see also Burney v. Dolich,* 2016 U.S. Dist. LEXIS 133311, *13 (D. Or. Sept. 28, 2016) (two named plaintiffs met their burden to establish similarly situated employees are interested in joining the action under "lenient standard applicable to conditional certifications of a collective action" where four additional plaintiffs filed consent forms). Defendants even explicitly acknowledge the speculative nature of these statements by relying on words like "perhaps," and have presented absolutely no evidence to support these claims.[4] DE 22 at 5 n.3, 27. The Court should therefore not give these statements any weight. *See Bowman v. Doe Run Res. Corp.*, 2014 U.S. Dist. LEXIS 98333, * 16 (E.D. Mo. Jul. 21, 2014) ("An alleged lack of interest in a collective action by potential class members is not an appropriate factor to consider when deciding whether to conditionally certify a collective action."); *see also, e.g., Chin v. Tile Shop, LLC,* 57 F. Supp. 3d 1075, 1091 (D. Minn. 2014) (no threshold number of opt-in plaintiffs required for conditional certification, conditionally

---

[4]     Without providing any evidentiary support, defendants also repeatedly reference the "multiple Facebook groups" that plaintiffs are using to promote the instant lawsuit. *See* Opp. at 4, 27. Not only is this assertion unsupported by any evidence, plaintiffs are wholly unaware of the existence of any such Facebook groups.

certifying collective action where only four of a potential 2,700 opt-in plaintiffs joined the action

in the first six months of litigation); *Jones v. JGC Dallas LLC,* 2012 U.S. Dist. LEXIS 185042,

*17 n.8 (N.D. Tex. Nov. 29, 2012) (alleged *de facto* notice of an FLSA lawsuit resulting from a

posting of the FLSA's anti-retaliation provision and notice that a licensing agreement does not

affect the employee's rights to bring a wage and hour lawsuit is not equivalent to notice of a

collective action, so it is improper to infer that there is a lack of interesting in joining the action

from the poor response to the prior postings); *Ware v. T-Mobile USA,* 828 F. Supp. 2d 948, 955

(M.D. Tenn. 2011) (finding sufficient interest to conditionally certify a class with only a single

opt-in plaintiff given the "fairly lenient standard").

Defendants present numerous objections to plaintiffs' proposed Notice premised on their

speculative assumption that the putative class already has sufficient knowledge and information

about the lawsuit as a result of a single on-line newspaper article and a handful of alleged

Facebook groups. DE 22 at 26-28. As a result, defendants argue that plaintiffs should be limited

to distributing notice through mail, and that a 30-day notice period is sufficient. *Id.*

However, "[t]he Supreme Court has recognized that the benefits of a collective action

'depend on employees receiving accurate and timely notice . . . so that they can make informed

decisions about whether to participate.'" *Eley v. Stadium Grp.*, 2015 U.S. Dist. LEXIS 126184,

*7 (D.D.C. Sept. 22, 2015) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110

S. Ct. 482, 107 L. Ed. 2d 480 (1989)). The entire purpose of collective action certification is to

afford potential plaintiffs accurate and timely notice of the lawsuit. *See, e.g., Arnold v. Acapella,*

*LLC,* 2016 U.S. Dist. LEXIS 134503, 12 n.6 (D. Md. Sept. 29, 2016) (purpose of notice stage is

"to advise potential plaintiffs of the existence of this suit and their right to 'opt-in'"); *Alderoty v.*

*Maxim Healthcare Servs.,* 2015 U.S. Dist. LEXIS 129565, *5 (D. Md. Sept. 23, 2015) (purpose

of conditional certification is to ensure "timely, accurate, and informative" notice to potential

plaintiffs); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545 (S.D.N.Y. 2013)

("purpose of notice is to start a conversation among employees, so as to ensure that they are

notified about potential violations of the FLSA and meaningfully able to vindicate their statutory

rights"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)

("The overarching policies of the FLSA's collective suit provisions require that the proposed

notice provide accurate and timely notice concerning the pendency of the collective action, so

that [potential plaintiffs] can make informed decisions about whether to participate."); *Witteman

v. Wis. Bell, Inc.*, 2010 U.S. Dist. LEXIS 8845, *10 (W.D. Wis. Feb. 2, 2010) (purpose of

conditional certification and notice is "to inform potential class members of their rights"). Thus,

it is illogical for the defendants to assume that ***prior to*** the issuance of court-supervised notice all

potential plaintiffs have received sufficient information about the lawsuit to be fully informed of

their rights and to have an opportunity to join. Furthermore, defendants' strenuous objection to

the issuance of notice, as well as defendants' attempts to severely limit the time period for

opting-in, reveal their belief that hundreds of employees may, in fact, wish to join the lawsuit if

provided with the opportunity.

   In addition, despite the defendants' contention, this Court has recognized that the

production of "potential plaintiffs' names, home addresses, email addresses, and phone numbers"

are common in collective actions and is appropriate. *See, e.g., Eley,* 2015 U.S. Dist. LEXIS

126184 at *8. It is only through the specific receipt of notice delivered through one of these

methods that the parties can be assured that each potential plaintiff was given sufficient

opportunity to evaluate his or her options with regard to joining the lawsuit. *See, e.g., Johnston v.

J&B Mech., LLC*, 2017 U.S. Dist. LEXIS 141863, *10 (W.D. Ken. Sept. 1, 2017) ("the purpose

of the conditional certification stage is not to determine if potential plaintiffs will join, but to actually give them notice of the pending collective action so they can decide whether to opt-in to the lawsuit").

Further, defendants' suggestion that the opt-in period should be limited to 30 days runs afoul of the accepted, standard practice in this jurisdiction. As this Court typically and regularly permits opt-in periods of 60 days in collective actions, plaintiffs will agree that a 60-day notice period is appropriate; plaintiffs initially requested a 90-day opt-in period. DE 14-1. *See also, e.g., Vazquez v. Grunley Constr. Co.*, 2016 U.S. Dist. LEXIS 51433, *15 (D.D.C. Apr. 18, 2016) (granting 60-day opt-in period); *Eley,* 2015 U.S. Dist. LEXIS 126184 at *9; *Ayala v. Tito Constrs.*, 12 F. Supp. 3d 167, 173 (D.D.C. 2014) (granting 60-day opt-in period).

### D. This Court Should Not Defer Ruling on Plaintiffs' Proposed Notice Pending Defendants' Motion for Judgment on the Pleadings

This Court should not defer a ruling on the Notice pending defendants' anticipated motion for judgment on the pleadings. DE 22 at 28. Defendants filed their motion just hours ago. DE 23. Given defendants' alleged grounds for their motion, defendants should have filed a motion to dismiss; instead, defendants answered plaintiffs' Amended Complaint. DE 17-18. One of the primary purposes of notice to employees is to provide prompt notice of their claims and an opportunity to join the lawsuit to avoid the statute of limitations running. This concern is particularly prominent in a case involving an itinerant workforce such as one involving waiters. *See, e.g., Whitehorn,* 767 F. Supp. 2d at 450 (granting conditional certification and issuance of notice to tipped restaurant workers because "the overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate."); *see also, cf., Hart v. Crab Addison, Inc.*, 2015 U.S. Dist. LEXIS

9197, *13-15 (W.D.N.Y. Jan. 27, 2015) (granting equitable tolling of statute of limitations in

FLSA action on behalf of tipped servers, hostesses, and bartenders where significant delay in

issuing decision on plaintiffs' motion for conditional certification "may adversely affect the

rights of class members who may have no notice of this lawsuit"). Because the statute of

limitations is running on current and former employees' claims, conditional certification should

be granted and notice promptly issued to ensure that all putative class members are timely

apprised of the lawsuit and afforded an opportunity to join. *See Halle v. West Penn Allegheny

Health Sys.,* 842 F.3d 215, 224 (3d Cir. 2016) ("A district court's early intervention in the

preparation and distribution of notice to potential participants serves legitimate purposes,

including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to

expedite disposition of the action."); *Lewis v. Nev. Prop. 1, LLC,* 2013 U.S. Dist. LEXIS 8945,

*39 (D. Nev. Jan. 22, 2013) (refusing to deny or defer a decision on plaintiffs' motion for

conditional certification pending a decision on defendant's motion to dismiss because the court's

heavy docket may prevent a prompt decision on the motion to dismiss and because permitting

notice to be circulated allows the status quo to be maintained during the pendency of the motion

to dismiss and prevents potential plaintiffs' statute of limitations from expiring). Putative

plaintiffs should not be stripped of their right to join the lawsuit as a result of the defendants'

muddled litigation strategy. *See Brooks v. C.H. Robinson Int'l, Inc.*, 2017 U.S. Dist. LEXIS

140660, *8 (W.D. Mo. May 9, 2017) (denying a stay of conditional certification pending

outcome of defendant's motion to dismiss, because "conditional certification is merely notice,"

and because "[t]his is the typical practice of processing FLSA actions.").

### III.     CONCLUSION

As demonstrated by plaintiffs' opening motion for conditional certification, as well as the information set forth above, plaintiffs have met the minimal showing necessary to establish they are similarly situated to other individuals who work or have worked for defendants as a server, bartender, or busser at any time since June 7, 2014. Accordingly, plaintiffs respectfully request that that this Court: (1) authorize this case to proceed as a collective action; (2) provide plaintiffs' counsel with the names, last known addresses, cell phone numbers, and email addresses of all employees who have worked as servers, bussers, and/or bartenders at defendants' restaurants in D.C., Maryland, and/or Virginia at any time since June 7, 2014; and (3) direct the issuance of plaintiffs' proposed notice with a 60-day opt in period to all prospective class members.

Dated: September 20, 2017                         Respectfully submitted,

                                                  _____/s/ *Molly A. Elkin*_____
                                                  Gregory K. McGillivary
                                                  Molly Elkin
                                                  T. Reid Coploff
                                                  WOODLEY & McGILLIVARY LLP
                                                  1101 Vermont Ave., N.W.
                                                  Suite 1000
                                                  Washington, DC 20005
                                                  Phone: (202) 833-8855
                                                  gkm@wmlaborlaw.com
                                                  mae@wmlaborlaw.com
                                                  trc@wmlaborlaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on September 20, 2017, a copy of the foregoing document was served on the following individuals by filing the document on the Court's CM/ECF system:

Meredith S. Campbell
SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.
12505 Park Potomac Ave., Sixth Floor
Potomac, MD 20854
Phone: (301) 255-0550
mcampbell@shulmanrogers.com

Joy C. Einstein
SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.
12505 Park Potomac Ave., Sixth Floor
Potomac, MD 20854
Phone: (301) 945-9250
jeinstein@shulmanrogers.com


       /s/ *Molly A. Elkin*
Molly A. Elkin
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., NW
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
Fax: (202) 452-1090
mae@wmlaborlaw.com