## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHAYN STEPHENS *et al.*,

        *Plaintiffs*,

    v.

FARMERS RESTAURANT GROUP *et al.*,

        *Defendants*.

Civil Action No. 17-1087 (TJK)

## MEMORANDUM OPINION AND ORDER

Plaintiffs, eight current and former servers at five restaurants operated by Defendants, claim that Defendants violated federal and state laws concerning the minimum wage, overtime pay, and sick leave.  In the instant motion,[1] Plaintiffs seek conditional certification of an opt-in collective action under federal and D.C. law.  For reasons set forth below, the Court will grant the motion in part and deny it in part.  Conditional certification will be granted, with the following limitations:

First, the putative class is limited to servers.

Second, conditional certification is not granted with respect to the following factual allegations: (a) Plaintiffs' "homework" allegations; (b) Plaintiffs' allegations regarding uncompensated time at pre-shift meetings insofar as they relate to the Founding Farmers Tysons restaurant in Virginia; and (c) Plaintiffs' allegation that Defendants failed to aggregate hours worked at different restaurants for overtime purposes.

---

[1] ECF No. 13.  In this Opinion, the "motion" means the foregoing motion unless otherwise specified.  The parties submitted the following briefing on the motion: ECF No. 14 ("Pls.' Br."), ECF No. 22 ("Defs.' Opp'n"), and ECF No. 24 ("Pls.' Reply").  Defendants also moved for leave to file a surreply, *see* ECF No. 27; that motion will be denied for reasons set forth below.

Third, the putative class will be divided into three sub-classes, one for each of the three relevant jurisdictions (the District of Columbia, Maryland, and Virginia).

Fourth, Defendants will be required to produce names, mailing addresses, and email addresses for notice purposes within the next twenty days but, absent a further order of the Court, will not be required to produce telephone numbers or to include notices with paychecks mailed to employees.  The opt-in period will last sixty days from when notice is sent.

Fifth, the Court does not approve Plaintiffs' proposed form of notice (Pls.' Br., Ex. A, ECF No. 14-1).  Instead, the Court will order the parties to meet, confer, and submit to the Court a revised form of proposed notice consistent with this Opinion by February 9, 2018.

## I.    Background

### A.    The Amended Complaint

Defendant Farmers Restaurant Group operates five restaurants in the D.C. metropolitan area: three in the District of Columbia (Founding Farmers DC, Farmers Fishers Bakers, and Farmers & Distillers), one in Maryland (MoCo's Founding Farmers), and one in Virginia (Founding Farmers Tysons).  ECF No. 5 ("Am. Compl.") ¶ 3.  Plaintiffs allege that the two individual Defendants, Daniel Simons and Michael Vucurevich, own Farmers Restaurant Group. *Id.* ¶ 8.

Plaintiffs, eight current and former employees at the restaurants, claim that Defendants' conduct violated the minimum wage and overtime provisions of the federal Fair Labor Standards Act of 1938 ("FLSA"),[2] Am. Compl. ¶¶ 45-59, the minimum wage and overtime provisions of the D.C. Minimum Wage Act ("DCMWA"),[3] Am. Compl. ¶¶ 60-74, the sick leave provisions of

---

[2] 29 U.S.C. § 201 *et seq.*
[3] D.C. Code § 32-1001 *et seq.*

the D.C. Accrued Sick and Safe Leave Act of 2008 ("Sick Leave Act"),[4] Am. Compl. ¶¶ 75-78,

the minimum wage and overtime provisions of the Maryland Wage and Hour Law,[5] Am. Compl.

¶¶ 79-94, and the payment requirements of the Maryland Wage Payment and Collection Law,[6]

Am. Compl. ¶¶ 95-101.  Plaintiffs have brought their case as a putative opt-in collective action

under the FLSA and D.C. law, *id.* ¶¶ 10-15, and as a putative Rule 23 opt-out class action under

D.C. and Maryland law, *id.* ¶¶ 16-32.  The instant motion relates only to Plaintiffs' proposed

collective action, and accordingly Plaintiffs' Maryland-law claims are not relevant to the issues

presently before the Court.

　　　Plaintiffs claim that Defendants engaged in the following allegedly improper employment

practices:

- Defendants required employees to use their own money "to purchase uniforms including, but not limited to, specific denim chambray shirts, suspenders, black non-slip shoes, aprons, and bow ties," *id.* ¶ 36, and "to clean, starch, and press their uniforms," *id.* ¶ 38.

- Defendants required employees "to purchase equipment for use while at work, including, but not limited to, bottle openers, corkscrews, black lighters, and black click-top pens."  *Id.* ¶ 37.

- Defendants required employees "to attend pre-shift meetings" before each shift that lasted "on average 15 to 20 minutes," and employees were not compensated for time spent at the meetings.  *Id.* ¶ 39.

- Defendants required employees "to engage in close-out duties for 30 minutes to two hours per shift," and such duties included without limitation "rolling silverware, resetting tables, polishing silver, and cleaning and setting up the restaurants."  *Id.* ¶ 40.  Similarly, Defendants required employees to spend time "sweeping, cleaning, and preparing the restaurants to open before their shifts."  *Id.* ¶ 49(d).

---

[4] D.C. Code § 32-531.01 *et seq.*
[5] Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*
[6] Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*

- Defendants "required plaintiffs to pool their tips and share tip proceeds with staff who do not customarily and regularly receive tips and gratuities, including their managers." *Id.* ¶ 44.

- When employees worked at multiple restaurants within Farmers Restaurant Group, Defendants "counted the hours of work at each location separately for purposes of calculating overtime to avoid paying overtime." *Id.* ¶ 41.

- Defendants generally failed to compensate Plaintiffs "for all hours worked over 40 in a workweek at the proper overtime rate." *Id.* ¶ 43.

- Defendants failed to provide employees with sick leave. *Id.* ¶ 42.

- Plaintiffs allege that they were paid using the "tip credit" for purposes of federal and state labor law. *See id.* ¶ 35. That is, employees were paid a small cash wage (which under federal law must be at least $2.13), with the remainder of the minimum wage made up by tips. *See id.* ¶ 51.

Defendants allegedly applied these practices to the named Plaintiffs and to similarly situated employees, namely "servers, wait staff, and bartenders." *Id.* ¶ 14.

Since the Amended Complaint was filed, Plaintiffs have submitted opt-in consents from five additional putative class members that seek to participate in the action. *See* ECF Nos. 9, 25.

### B.    Plaintiffs' Declarations

Seven of the eight named Plaintiffs have submitted declarations in support of the motion.[7] The declarations explain that each Plaintiff either previously worked or still works as a "server" at one (or, in some cases, two) of the restaurants, with each Plaintiff's tenure beginning at some point since March 2015 and lasting for various lengths of time. *See* Calvillo Decl. ¶ 1; Clark Decl. ¶ 1; Krohn Decl. ¶ 1; Pitt Decl. ¶ 1; Stephens Decl. ¶ 1; Storey Decl. ¶ 1; Willig Decl. ¶ 1. Four named Plaintiffs worked at two restaurants, and each such Plaintiff claims that the same

---

[7] Pls.' Br., Ex. B, ECF No. 14-2 ("Calvillo Decl."); Pls.' Br., Ex. C, ECF No. 14-3 ("Clark Decl."); Pls.' Br., Ex. D, ECF No. 14-4 ("Krohn Decl."); Pls.' Br., Ex. E, ECF No. 14-5 ("Pitt Decl."); Pls.' Br., Ex. F, ECF No. 14-6 ("Stephens Decl."); Pls.' Br., Ex. G, ECF No. 14-7 ("Storey Decl."); Pls.' Br., Ex. H., ECF No. 14-8 ("Willig Decl."). Plaintiff Austin Hall did not submit a declaration.

policies applied at both restaurants.  *See* Calvillo Decl. ¶¶ 1-2; Clark Decl. ¶¶ 1-2; Pitt Decl.

¶¶ 1-2; Stephens Decl. ¶¶ 1-2.  Only Plaintiff Calvillo worked at the Maryland restaurant,

MoCo's Founding Farmers, *see* Calvillo Decl. ¶ 1, and only Plaintiff Storey worked at the

Virginia restaurant, Founding Farmers Tysons, *see* Storey Decl. ¶ 1.

The declarations attest to each Plaintiff's knowledge of the allegedly unlawful practices

at the restaurants.  These declarations track the allegations in the Amended Complaint in most,

but not all, respects.

- Plaintiffs declare that they were required to purchase "uniforms" generally similar to those described in the Amended Complaint, and that they were required to launder the uniforms.  *See* Calvillo Decl. ¶¶ 4-5; Clark Decl. ¶¶ 4-5; Krohn Decl. ¶¶ 3-4; Pitt Decl. ¶¶ 4-5; Stephens Decl. ¶¶ 4-5; Storey Decl. ¶¶ 3-4; Willig Decl. ¶¶ 3-4.  The descriptions of the uniforms vary somewhat from plaintiff to plaintiff.  For example, while most Plaintiffs include "denim chambray shirts" when describing the uniform, *e.g.*, Calvillo Decl. ¶ 4, Plaintiff Pitt includes "white oxford shirts with non-French cuffs" instead, Pitt Decl. ¶ 4.  Similarly, only two of the seven Plaintiffs mention suspenders in their descriptions, Calvillo Decl. ¶ 4; Stephens Decl. ¶ 4, and the word "suspenders" appears to have been whited out in Plaintiff Pitt's declaration, *see* Pitt Decl. ¶ 4.

- Plaintiffs declare that they were required to purchase equipment including "bottle openers, corkscrews, black lighters, and click-top black ink pens" for work.  Calvillo Decl. ¶ 6; Clark Decl. ¶ 6; Krohn Decl. ¶ 5; Pitt Decl. ¶ 6; Stephens Decl. ¶ 6; Storey Decl. ¶ 5; Willig Decl. ¶ 5.

- With two notable exceptions, Plaintiffs uniformly report that they were required to attend pre-shift meetings lasting, "on average, 15 to 20 minutes each" and were prohibited from "clocking in" until the meetings were over.  Calvillo Decl. ¶ 7; Krohn Decl. ¶ 6; Pitt Decl. ¶ 7; Stephens Decl. ¶ 7; Willig Decl. ¶ 6.  However, Plaintiff Clark, who worked at both Farmers & Distillers and Founding Farmers DC, mentions only Farmers & Distillers when stating that servers could not "clock in" before the meetings (remaining silent on whether this was the case at Founding Farmers DC).  *See* Clark Decl. ¶ 7.  And Plaintiff Storey explains that employees are prohibited from "clocking in" at Founding Farmers Tysons only if they do not "come in at least 10 minutes early."  Storey Decl. ¶ 6.

- Plaintiffs also claim that they lacked the opportunity to earn tips during the pre-shift meetings.  Calvillo Decl. ¶ 7; Clark Decl. ¶ 7; Krohn Decl. ¶ 6; Pitt Decl. ¶ 7; Stephens Decl. ¶ 7; Storey Decl. ¶ 6; Willig Decl. ¶ 6.

Plaintiffs similarly describe having performed "30 minutes to two hours" after each shift of non-tipped close-out duties, such as "folding linens, polishing silverware, bullets, and ramekins, cleaning the wait stations, removing trash, restocking the takeout and to go boxes, restocking condiments, cleaning and restocking beverage stations, polishing wine glasses, and preparing tables." Calvillo Decl. ¶ 8; *see* Clark Decl. ¶ 8; Krohn Decl. ¶ 7; Pitt Decl. ¶ 8; Stephens Decl. ¶ 8; Storey Decl. ¶ 7; Willig Decl. ¶ 7. Once again, there are some variations among the duties described. For example, Plaintiff Clark does not report having polished silverware, and Plaintiffs Clark and Storey do not say that they polished ramekins. *See* Clark Decl. ¶ 8; Storey Decl. ¶ 7.

- All Plaintiffs report having pooled their tips with other employees, in most cases with "bartenders, bussers, runners, and stockers." Calvillo Decl. ¶ 9; Clark Decl. ¶ 9; Krohn Decl. ¶ 8; Pitt Decl. ¶ 9; Stephens Decl. ¶ 9; Storey Decl. ¶ 8. Plaintiff Willig says that the tip pool includes "bussers, runners, pastry workers, and stockers." Willig Decl. ¶ 8.

- Only Plaintiff Stephens, who worked at Farmers & Distillers and Farmers Fishers Bakers, reports that Defendants would "count the hours worked at each restaurant separately in order to avoid" paying overtime. Stephens Decl. ¶ 11.

- Six Plaintiffs state that they were denied sick leave. Calvillo Decl. ¶ 12; Clark Decl. ¶ 10; Krohn Decl. ¶ 9; Pitt Decl. ¶ 11; Stephens Decl. ¶ 13; Willig Decl. ¶ 10. Three Plaintiffs further specify that, when they requested sick leave, they were ordered to come in to work. Clark Decl. ¶ 10; Pitt Decl. ¶ 11; Stephens Decl. ¶ 13. Plaintiff Storey does not declare that she was denied sick leave. *See* Storey Decl.

- Six Plaintiffs' declarations also include the allegation, absent from the Amended Complaint, that their first two weeks of work involved a "training" period during which they were required to perform homework for "one to two hours" each workday. Calvillo Decl. ¶ 11; Krohn Decl. ¶ 10; Pitt Decl. ¶ 10; Stephens Decl. ¶ 12; Storey Decl. ¶ 10; Willig Decl. ¶ 9. Plaintiff Clark's declaration does not mention any such homework. *See* Clark Decl.

- The cash wage that Plaintiffs earned varied by jurisdiction: $2.77 in D.C., $3.63 in Maryland, and $2.13 in Virginia. *See, e.g.*, Calvillo Decl. ¶ 3; Storey Decl. ¶ 2.

Plaintiffs report that these practices applied to "other servers" as well, with one exception: no Plaintiff states that Defendants' alleged sick-leave policies applied to employees other than the named Plaintiffs. *See* Calvillo Decl. ¶ 13; Clark Decl. ¶ 11; Krohn Decl. ¶ 11; Pitt

Decl. ¶ 12; Stephens Decl. ¶ 14; Storey Decl. ¶ 11; Willig Decl. ¶ 11.  In addition, only Plaintiffs

Calvillo, Stephens, and Storey say that they worked overtime, and each reports having worked

overtime either a quarter or a third of the time.  *See* Calvillo Decl. ¶ 10; Stephens Decl. ¶ 10;

Storey Decl. ¶ 9.

      **C.**      **Defendants' Declarations**

      Defendants filed four declarations, which accompanied their opposition brief.[8]  The

declarations were filed by (1) Defendant Simons, *see* Simons Decl., (2) the Director of

Accounting Operations at Founding Farmers Group, *see* Guilford Decl. ¶ 1, (3) a former General

Manager at MoCo's Founding Farmers, *see* Smith Decl. ¶ 1, and (4) a Service Manager at

Farmers Fishers Bakers, *see* Garcia Decl. ¶ 1.

      Defendants' declarations describe several differences among the restaurants that they

assert assist them in defeating conditional certification.  They explain that each restaurant is

owned by a separate limited liability company with a different ownership structure, although

Defendants do not appear to deny that Founding Farmers Group operates the restaurants

(presumably through those other entities).  *See* Simons Decl. ¶ 3.  Defendants also explain that

the restaurants have "operational differences" that affect their wage and hour policies.  *See id.*

¶ 4.  For example, Defendants state that the restaurants have varying volumes of work at

different times of the year and different hours of the day, resulting in different policies with

respect to shifts, pre-shift meetings, and side work.  *See id.* ¶¶ 5-7, 11.  Defendants also state that

the restaurants offer different types of food and service (for example, some offer brunch buffets

while others do not).  *See id.* ¶¶ 8-12.  Defendants state that their clothing policies (which they

---

[8] ECF No. 22-1 ("Simons Decl."); ECF No. 22-2 ("Guilford Decl."); ECF No. 22-3 ("Smith Decl."); ECF No. 22-4 ("Garcia Decl.").

describe as "style guides" rather than "uniforms") vary among the restaurants. *See id.* ¶ 13. They further state that there are variations in their policies regarding the tip credit and tip pooling, *see id.* ¶¶ 14, 17-18, and whether employees are required to roll and polish silverware, *see id.* ¶¶ 15-16.

Defendants' declarations also deny several of Plaintiffs' substantive allegations.  The declarations state that employees are not required to do homework, *see id.* ¶ 19; that Defendants have paid employees straight-time and overtime pay as required, *see id.* ¶¶ 20-21; Guilford Decl. ¶¶ 3-4; that Defendants gave employees paid time off to use as sick leave (and in some cases, paid employees for unused sick leave at the end of their employment), *see* Guilford Decl. ¶¶ 5-12; that pre-shift meetings were not held at MoCo's Founding Farmers, *see* Smith Decl. ¶ 6; and that such meetings varied in length and frequency at Farmers Fishers Bakers, *see* Garcia Decl. ¶¶ 6-9.  Defendants' declarations further state that employees are not eligible to begin taking sick leave until 90 days after they start their jobs, and that some employees work for fewer than 90 days or for not much longer than that.  *See* Guilford Decl. ¶¶ 6-9.  Finally, the declarations state that at least two individual managers, and some vendors, gave employees access to many of the tools that Plaintiffs claim they had to purchase (such as pens, "wine tools," and lighters).  *See* Smith Decl. ¶¶ 3-5; Garcia Decl. ¶¶ 3-5.

## II.  Legal Standard

### A.  Conditional Certification Under the FLSA

The FLSA affords employees a private right of action for violations of the statute's minimum wage and overtime provisions.  *See* 29 U.S.C. § 216(b); *Coffen v. Wash. Conv. & Sports Auth.*, No. 16-cv-1064 (RJL), 2017 WL 4279320, at *2 (D.D.C. Sept. 25, 2017). Employees may prosecute such actions "for and in behalf of . . . themselves and other employees

similarly situated," but unlike in a Rule 23 opt-out class action, any other employee seeking to

join the action must affirmatively opt in by filing "consent in writing to become such a party."

29 U.S.C. § 216(b).  Once such a "collective action" is filed, "the court has a managerial

responsibility to oversee the joinder of additional parties to assure that the task is accomplished

in an efficient and proper way."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71

(1989).  This responsibility includes ensuring that notice to putative class members "is timely,

accurate, and informative."  *Id.* at 172.  "District courts enjoy 'considerable discretion' to decide

whether and how collective actions should proceed and to fashion procedures for 'joining

similarly situated employees in a manner that is both orderly and sensible.'"  *Galloway v.

Chugach Gov't Servs., Inc.*, 263 F. Supp. 3d 151, 155 (D.D.C. 2017) (quoting *Dinkel v. MedStar

Health, Inc.*, 880 F. Supp. 2d 49, 52 (D.D.C. 2012)).

       In the absence of guidance from our Court of Appeals, courts in this Circuit have

followed the lead of other federal courts in adopting a "two-stage inquiry for determining when a

collective action is appropriate."  *E.g.*, *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 170

(D.D.C. 2014) (quoting *Dinkel*, 880 F. Supp. 2d at 52).  At the first stage, the Court determines

whether and how to notify putative class members.  *See id.*  While this stage is typically referred

to as "conditional class certification," no class is actually created, and the "procedural

safeguards" that govern certification of Rule 23 opt-out class actions do not apply.  *Galloway*,

263 F. Supp. 3d at 154-55.  Rather, plaintiffs must merely propose a class of "potential opt-in

plaintiffs who *may be* 'similarly situated' to the named plaintiffs with respect to whether a FLSA

violation has occurred."  *Ayala*, 12 F. Supp. 3d at 170 (quoting *Myers v. Hertz Corp.*, 624 F.3d

537, 555 (2d Cir. 2010) (emphasis added)).  If conditional certification is granted, then the matter

proceeds as a collective action through the close of discovery, at which time the defendant may

move for "decertification," prompting a "more searching" inquiry into whether putative class members are in fact "similarly situated." *Id.*; *see Galloway*, 263 F. Supp. 3d at 155-56.

Given the nature of conditional certification, the "bar for a plaintiff . . . is not high." *Ayala*, 12 F. Supp. 3d at 170. Plaintiffs need only make a "modest factual showing sufficient to demonstrate that [named] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (alteration in original) (quoting *Castillo v. P&R Enters., Inc.*, 517 F. Supp. 2d 440, 445 (D.D.C. 2007)). This burden "may be satisfied based on pleadings and affidavits." *Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 93 (D.D.C. 2013). But "pure speculation" is not sufficient. *Ayala*, 12 F. Supp. 3d at 170 (quoting *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013)). Courts have denied conditional certification, or certified a class narrower than the one proposed, where plaintiffs have failed "to produce any evidence that there was a common practice" covering the entire proposed class. *Dinkel*, 880 F. Supp. 2d at 55.

Once plaintiffs have met their burden, defendants may not thwart conditional certification merely by contradicting plaintiffs' claims, even if defendants provide "voluminous documentation" purporting to show that no violations occurred. *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015). Rather, "district courts should ordinarily refrain from resolving factual disputes and deciding matters going to the merits." *Dinkel*, 880 F. Supp. 2d at 53. Moreover, "[p]laintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members." *Ayala*, 12 F. Supp. 3d at 170 (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). Accordingly, defendants cannot defeat conditional certification by pointing to immaterial variations in how the improper policies alleged by the plaintiff were applied. *See,*

*e.g.*, *Blount*, 945 F. Supp. 2d at 94-95.  Conditional certification is also often appropriate despite

differences among putative class members that go to damages, because a trial on liability may be

followed by "individualized damages calculations."  *Id.* at 96.  Nonetheless, conditional

certification may be inappropriate where defendants' liability to each putative class member

turns on individualized questions.  *See, e.g.*, *Dinkel*, 880 F. Supp. 2d at 54-55.

### B.   Conditional Certification Under the DCMWA and the Sick Leave Act

D.C. law permits DCMWA and Sick Leave Act claims to be brought "[c]onsistent with

the collective action procedures of the Fair Labor Standards Act," in an opt-out class action, or in

a collective action that is subsequently converted into a class action.  D.C. Code § 32-

1308(a)(1)(C)(iii)-(v).[9]  While D.C. law thus incorporates the FLSA's procedural provisions,

D.C. law differs from the FLSA in that it provides a definition of "similarly situated":

> (2) For the purposes of this subsection, 2 or more employees are
> similarly situated if they:
>
> > (A) Are or were employed by the same employer or
> > employers, whether concurrently or otherwise, at some
> > point during the applicable statute of limitations period;
> >
> > (B) Allege one or more violations that raise similar
> > questions as to liability; and
> >
> > (C) Seek similar forms of relief.

---

[9] After a 2015 statutory amendment, decisions in this Circuit questioned whether employees still had the option to pursue an opt-in collective action under the DCMWA.  *See Rivera v. Power Design, Inc.*, 172 F. Supp. 3d 321, 330-31 (D.D.C. 2016); *Eley v. Stadium Grp., LLC*, No. 14-cv-1594 (KBJ), 2015 WL 5611331, at *4-5 (D.D.C. Sept. 22, 2015).  One decision held that the 2015 amendment did in fact foreclose the bringing of opt-in collective actions under the DCMWA.  *See Vasquez v. Grunley Constr. Co.*, 200 F. Supp. 3d 93, 101-03 (D.D.C. 2016), *superseded by statute*, Wage Theft Prevention Clarification and Overtime Fairness Amendment Act of 2016, D.C. Law 21-266, sec. 2(f)(1), § 8(a)(1), 64 D.C. Reg. 2140, 2144 (Feb. 24, 2017) (codified at D.C. Code § 32-1308(a)(1)).  In 2017, the D.C. Council responded by revising the statute to make clear that collective-action procedures are still available.  *See* D.C. Code § 32-1308(a)(1)(C)(iii)-(v).

> (3) Employees shall not be considered dissimilar under this
> subsection solely because their:
>
> > (A) Claims seek damages that differ in amount; or
> >
> > (B) Job titles or other means of classifying employees
> > differ in ways that are unrelated to their claims.

D.C. Code § 32-1308(a)(2)-(3).

Plaintiffs cite this definition in their brief and describe it as a "similar standard" to the one governing the FLSA.  Pls.' Br. at 12.  Because neither party has suggested that conditional certification should be decided differently under the FLSA and D.C. law, the Court assumes for purposes of this decision that there is no material difference between them.[10]

## III.   Analysis

As discussed below, Plaintiffs' request for conditional certification will be granted in part and denied in part.  The Court will first address the substance of the conditional-certification analysis, then turn to the use of sub-classes, and finally address how to proceed with notice to putative class members.

### A.   Conditional Certification

To determine whether conditional certification is warranted, the Court will begin by considering Defendants' contention that the proposed class is overbroad insofar as it purports to include "servers, wait staff, and bartenders."  Next, the Court will address the particulars of Plaintiffs' minimum wage, overtime, and sick leave claims, and Defendants' responses.  The

---

[10] The factors listed in D.C. Code § 32-1308(a)(2) are similar to factors that federal courts have sometimes considered when determining whether employees are "similarly situated."  *See, e.g.*, *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 119 (D.D.C. 2004).  In addition, the two limitations set forth in D.C. Code § 32-1308(a)(3) appear to be at least generally consistent with FLSA decisions.  *See, e.g.*, *Blount*, 945 F. Supp. 2d at 96-97 (holding differences in damages amounts did not suffice to defeat conditional certification); *Rivera*, 172 F. Supp. 3d at 326 (holding job titles not relevant to conditional certification); *Castillo*, 517 F. Supp. 2d at 446 (similar).

Court will then address the parties' arguments regarding the significance of interest among absent class members in joining the lawsuit.  Finally, the Court will consider Defendants' argument that the putative class period should be limited.

### 1.    Job Types to Be Included in the Putative Class

Plaintiffs seek to certify a class that includes "servers, wait staff, and bartenders."  Am. Compl. ¶ 14; Pls.' Br. at 4.  But as Defendants correctly point out, Plaintiffs have submitted declarations only from servers, and those declarations describe Defendants' allegedly improper policies only insofar as those policies relate to "other servers."  Defs.' Opp'n at 25; *see* Calvillo Decl. ¶ 13; Clark Decl. ¶ 11; Krohn Decl. ¶ 11; Pitt Decl. ¶ 12; Stephens Decl. ¶ 14; Storey Decl. ¶ 11; Willig Decl. ¶ 11.  Because Plaintiffs have made no showing that they are similarly situated to employees other than servers, the Court will limit the proposed class accordingly.  *See Dinkel*, 880 F. Supp. 2d at 55 (excluding employees working at six hospitals from the class where plaintiffs had not "present[ed] any evidence that there was a common practice at those six hospitals").

Plaintiffs make two arguments in support of certifying a class beyond servers.  First, Plaintiffs suggest that Defendants have identified only minor variations in job responsibilities between servers and other employees that should not defeat conditional certification, citing *Mendoza v. Mo's Fisherman Exchange, Inc.*, No. 1:15-cv-1427 (ELH), 2016 WL 3440007 (D. Md. June 22, 2016).  *See* Pls.' Reply at 6.  But the plaintiffs in *Mendoza* submitted declarations from multiple employees who had worked in different roles (as dishwashers, food preparation workers, and runners), and who each estimated "that between 75 and 100 employees . . . did not receive overtime wages."  *Mendoza*, 2016 WL 3440007, at \*5; *see id.* at \*5-9.  The declarants in that case further reported having personally spoken with employees at other restaurant locations,

who alleged that similar misconduct had occurred at those other locations. *Id.* at *14. In light of that evidence, the court granted conditional certification despite defendants' contention that the class included employees whose job titles and pay rates differed from the declarants'. *See id.* at *17. By contrast, the declarations submitted in this case do not include any alleged misconduct directed toward any employees other than servers. Therefore, Plaintiffs' allegations regarding non-servers are the very sort of "pure speculation" that does not suffice to support conditional certification. *Ayala*, 12 F. Supp. 3d at 170 (quoting *Symczyk*, 656 F.3d at 193).

Second, Plaintiffs argue that bartenders and servers are, in fact, similarly situated because both received tips from the same tip pools. *See* Pls.' Reply at 6, 13. Defendants agree that bartenders and servers received tips from the same tip pools, but argue that they are nonetheless differently situated because servers contributed tips to the tip pools while bartenders did not. *See* Defs.' Opp'n at 22; Simons Decl. ¶ 18.[11] The Court agrees with Defendants because, under the statute governing tip pools, tipped employees do not have a claim arising from an invalid tip pool unless they contributed tips to the pool.

The FLSA requires employees to receive a minimum wage of $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). Employees who qualify as "tipped employees" under the statute may be paid a lower cash wage (as low as $2.13 per hour), with the remainder of the minimum wage made up by the tips that such employees receive. *See* 29 U.S.C. § 203(m); *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 16 (D.D.C. 2010). The difference between the cash wage actually paid and the minimum wage is referred to as the "tip credit." *Ventura*, 738 F. Supp. 2d

---

[11] Plaintiffs also suggest that Defendants, by agreeing that bartenders and servers both receive tips from tip pools, have more broadly conceded that the same policies applied to bartenders and to servers. *See* Pls.' Reply at 6. The Court disagrees, and notes that Defendants have in fact vigorously argued that Plaintiffs' proposed class is overbroad. *See* Defs.' Opp'n at 25-26.

at 16.  In order to "take" the tip credit (that is, to count tips toward an employee's minimum

wage), an employer must satisfy certain conditions.  In particular, the tip credit:

> shall not apply with respect to any tipped employee unless such
> employee has been informed by the employer of the provisions of
> this subsection, and all tips received by such employee have been
> retained by the employee, except that this subsection shall not be
> construed to prohibit the pooling of tips among employees who
> customarily and regularly receive tips.

29 U.S.C. § 203(m); *see also* D.C. Code § 32-1003(g) (containing a substantially identical

provision).  That is, to take the tip credit toward an employee's wages, the employer must notify

that employee of the tip-credit provisions, and that employee must retain all the tips that she

receives.  *See Ventura*, 738 F. Supp. 2d at 16.  If an employer fails to comply with these

conditions, it cannot take the tip credit toward the wages of that employee, who is then entitled to

the difference between the minimum wage and the cash wage paid in damages (in addition to any

other relief, such as liquidated damages, that might be available).  *See id.* at 17-18.

The statute contains an exception to the requirement that an employee being paid using

the tip credit must retain all tips she receives.  Under the exception, employees may be required

to share their tips with other "employees who customarily and regularly receive tips" as part of a

tip pool.  29 U.S.C. § 203(m).  If the tip pool includes employees who do not customarily and

regularly receive tips—as Plaintiffs allege in this case, *see* Am. Compl. ¶ 44—then the tip pool is

invalid.  *See, e.g.*, *Arencibia v. 2401 Rest. Corp.*, 831 F. Supp. 2d 164, 175 (D.D.C. 2011).  But

the mere fact that a tip pool is invalid does not necessarily mean that each employee who

received funds from the invalid tip pool has a claim.  The tip-pool provision is not an

independent obligation, but merely an "exception from the tip-retention requirement," *White v.

14051 Manchester Inc.*, 301 F.R.D. 368, 387 (E.D. Mo. 2014) (quoting FLSA Opinion Letter

from DOL Wage & Hour Div. (Nov. 4, 1997), 1997 WL 998047, at *2).  Accordingly, so long as

a given tipped employee retains all the tips that she received, the tip credit may still be taken toward that employee's wages notwithstanding the invalid tip pool. *See Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1359 (M.D. Fla. 2016) ("The existence of a tip pool is relevant in the FLSA context only to the extent that it interferes with an employee's ability to retain all of the employee's tips."). The only tipped employees with a claim would be those who do not retain all the tips they received—that is, those who are required to contribute tips to the invalid tip pool.

Here, Plaintiffs have asserted that both "[s]ervers and bartenders . . . are required to contribute their hard-earned tips to a tip pool that includes non-tipped workers." Pls.' Br. at 7. Had Plaintiffs substantiated that assertion, they might have been able to establish that bartenders and servers were similarly situated with respect to the alleged tip-pool policy. Instead, Plaintiffs' declarations show only that servers contributed to the allegedly invalid tip pools, and are silent with respect to bartenders. Plaintiffs therefore have not shown that bartenders and servers have the same claim, much less that they are similarly situated. Accordingly, the class will be limited to servers.[12]

## 2.  Minimum Wage Claim

Plaintiffs claim that, as the result of the various practices they describe, they and similarly situated employees were paid less than the relevant minimum wage. *See, e.g.*, Am. Compl. ¶¶ 51-55. The parties disagree on the level of generality at which to analyze this claim for purposes of the motion. Plaintiffs argue the Court should certify their minimum wage claim as a whole without individually scrutinizing the "numerous factual assertions" in the Amended

---

[12] Defendants sought leave to file a surreply in order to address a suggestion in Plaintiffs' reply that the putative class includes "bussers." *See* ECF No. 27 at 2. The Court's ruling, by limiting the class to servers, has obviated any need for briefing on that issue, and therefore the surreply motion will be denied.

Complaint, which, according to Plaintiffs, "simply illustrate some, but not all, of the varying ways in which the defendants have failed to properly compensate their workers in violation of the FLSA and District of Columbia law."  Pls.' Reply at 5.

However, the conditional-certification standard turns on whether plaintiffs have demonstrated that a "common policy or plan that violated the law" may have applied across the putative class.  *E.g.*, *Ayala*, 12 F. Supp. 3d at 170 (quoting *Castillo*, 517 F. Supp. 2d at 445). That is, "class members in a collective action 'must share more than a common allegation that they were denied overtime or paid below the minimum wage.  The class members must put forth a common legal theory upon which each member is entitled to relief.'"  *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 119 (D.D.C. 2004) (quoting *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002)).  In this case, Plaintiffs have not alleged a single policy or legal theory, but a series of policies that allegedly caused, in different ways, violations of federal and state minimum wage laws.  The Court will therefore consider each policy separately.  *See, e.g.*, *Thedford v. Drive In of Evansville, Inc.*, No. 2:14-cv-0390-SLB, 2014 WL 5520954, at *11-14 (N.D. Ala. Oct. 31, 2014) (analyzing each alleged policy separately for conditional-certification purposes).  Those policies are: (a) the alleged requirement that employees purchase and launder "uniforms"; (b) the alleged requirement that employees purchase "tools of the trade"; (c) the alleged failure to compensate employees for required pre-shift meetings; (d) the alleged requirement that employees perform non-tipped pre- and post-shift work; (e) the alleged requirement that employees contribute to an invalid tip pool; and (f) the alleged requirement that employees spend uncompensated time doing "homework."

(a)      "Uniforms" Policy

Plaintiffs claim in their complaint and declarations that Defendants required them and other servers to purchase and clean their uniforms, and that these costs caused their wages to fall below the minimum wage. *See* Am. Compl. ¶¶ 36, 38, 52; Calvillo Decl. ¶¶ 4-5, 13; Clark Decl. ¶¶ 4-5, 11; Krohn Decl. ¶¶ 3-4, 11; Pitt Decl. ¶¶ 4-5, 12; Stephens Decl. ¶¶ 4-5, 14; Storey Decl. ¶¶ 3-4, 11; Willig Decl. ¶¶ 3-4, 11.  Defendants argue this showing is insufficient.  They argue that variations among Plaintiffs' declarations and among the different restaurants—such as the fact that some servers wore white shirts while others wore denim chambray shirts, and some wore suspenders while others did not—show a lack of similarity among putative class members. Defs.' Opp'n at 9-10.  But such minor variations are, in and of themselves, not enough to defeat conditional certification. *See Blount*, 945 F. Supp. 2d at 94-95 (granting certification despite wide variations in "type, frequency, and impact of interruptions on the guards' meal breaks" at issue).  Rather, courts have tended to grant certification despite some variability in uniforms, and to deny certification only in the face of more substantial variations. *Compare Brown v. Consol. Rest. Operations, Inc.*, No. 3:12-cv-788, 2013 WL 4804780, at *2-6 (M.D. Tenn. Sept. 6, 2013) (granting conditional certification where defendant had a common policy of requiring uniforms, despite variations at different restaurant locations), *with Williams v. Securitas Sec. Servs. USA, Inc.*, No. 2:10-cv-7181, 2011 WL 3629023, at *4-6 (E.D. Pa. Aug. 17, 2011) (denying certification of uniform-cleaning claim where plaintiffs described an "array of uniforms," including a "military-style" uniform involving a bomber jacket and a "lobby look" involving a blazer, across hundreds of different client sites).

Defendants argue that these variations have additional legal significance for two reasons. First, Defendants suggest that some of the alleged uniforms may not, in fact, be "uniforms" at all

under relevant law, meaning that liability will depend on a case-by-case basis analysis.  *See*

Defs.' Opp'n at 10-11.  But at this stage, Plaintiffs need only show that they and putative class

members "*may be* 'similarly situated' . . . with respect to whether a FLSA violation has

occurred."  *Ayala*, 12 F. Supp. 3d at 170 (quoting *Myers*, 624 F.3d at 555).  The ultimate liability

question is whether Defendants' clothing policy in fact required employees to purchase "a

specific type and style of clothing to be worn at work" (which would constitute a "uniform"), or

whether these "style guides" merely required "a general type of ordinary basic street clothing to

be worn while working" with "variations in details of dress" (which would not be a "uniform").

*Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998) (quoting DOL Wage & Hour

Div., Field Operations Handbook § 30c12(f)).  Plaintiffs' declarations describe required clothing

that is similar (though not identical) across the five restaurants.  Defendants themselves have

conceded that there were "style guides" in place at the restaurants, although they assert that the

guides were different at each location.  *See* Simons Decl. ¶ 13.  Given these facts, it is at least

possible that the foregoing liability question will have a single, classwide answer at summary

judgment or trial.[13]  Accordingly, Plaintiffs have adequately demonstrated that they may be

similarly situated to putative class members on this issue.

    Second, Defendants argue that variations in the amounts paid for the uniforms may give

rise to individualized liability questions.  *See* Defs.' Opp'n at 11.  Defendants explain that

uniform-related costs varied, and that the cash wage paid to tipped employees varies by

jurisdiction.  *Id.*  Therefore, Defendants argue, whether each employee can make out a claim will

---

[13] This assumes, of course, that Plaintiffs' "uniform" allegations make it to summary judgment.
Defendants have challenged the sufficiency of those allegations in their Motion for Partial
Judgment on the Pleadings, ECF No. 23, and the Court is not ruling on Defendants' motion at
this time.

ultimately depend on an individualized inquiry into whether the cost of that employee's uniform was enough to drive that employee's cash wage below the federal minimum. *See id.* Plaintiffs argue that, because the employees are paid using the tip credit, any imposition of improper uniform costs would drive their wages below the minimum wage as a matter of law. *See* Pls.' Reply at 11-12. The Court does not have to resolve this legal dispute, however, because even if Defendants are correct, their objection ultimately goes to damages and does not defeat conditional certification. *See Blount*, 945 F. Supp. 2d at 96-97.

Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012), is instructive. There, the court considered a motion to certify plaintiffs' New York Labor Law claims, including uniform claims, under Rule 23. *See id.* at 116, 119-20. The defendant in *Flores* advanced the same argument that Defendants make here: that the uniform claims should not be certified because they turned on the individualized question of whether the uniform costs caused individual class members' wages to drop below the minimum wage. *See id.* at 127. The court granted class certification, finding that whether defendants had a common uniform policy was suitable for class treatment at trial, while the policy's effect on individual class members' wages could be determined by a subsequent damages analysis. *See id.* at 128. Rule 23's "procedural safeguards" impose greater demands on plaintiffs seeking certification (and, conversely, fewer demands on defendants opposing certification) than the "modest factual showing" standard governing FLSA conditional certification. *Galloway*, 263 F. Supp. 3d at 154-55. Given that Defendants' argument failed in the Rule 23 context in *Flores*, it fares no better here. While Defendants may revisit the issue in a motion to decertify, Plaintiffs have, at this stage, made a sufficient showing that they are similarly situated to other servers with respect to the alleged uniform policy.

**(b)**     **"Tools of the Trade" Policy**

Plaintiffs also claim in their Amended Complaint and declarations that the requirement that they purchase "tools of the trade" (such as corkscrews and pens) caused their and other servers' pay to fall below the minimum wage.  *See* Am. Compl. ¶¶ 37, 53; Calvillo Decl. ¶¶ 6, 13; Clark Decl. ¶¶ 6, 11; Krohn Decl. ¶¶ 5, 11; Pitt Decl. ¶¶ 6, 12; Stephens Decl. ¶¶ 6, 14; Storey Decl. ¶¶ 5, 11; Willig Decl. ¶¶ 5, 11.[14]  Relying on their own declarations, Defendants attempt to contradict these claims, arguing that "most if not all employees are not 'required' to purchase any of these 'tools.'"  Defs.' Opp'n at 13.  Alternatively, Defendants suggest that there may have been variability regarding access to tools, *see id.* at 12-13, further contradicting Plaintiffs' declarations, which describe an identical practice at each restaurant.  This sort of "factual dispute" is inappropriate for resolution at conditional certification.  *See Dinkel*, 880 F. Supp. 2d at 53.  In addition, as they did with respect to the alleged "uniform" policy, Defendants argue that variations in the cost of tools and the cash wage create individualized questions regarding whether each putative class member actually earned an amount below the minimum wage.  *See* Defs.' Opp'n at 13-14.  The Court rejects this argument for the same reasons set forth above relating to the "uniforms" policy.  Plaintiffs have thus met their burden with respect to the alleged "tools" policy.

---

[14]   In their Motion for Partial Judgment on the Pleadings, ECF No. 23, Defendants take the position that these items do not constitute "tools" under relevant law.  Once again, the Court reserves judgment on that motion.

### (c)    Uncompensated Pre-Shift Meetings Policy

Plaintiffs also assert that Defendants required employees to attend pre-shift meetings without compensation, potentially in violation of minimum wage laws.  *See* Am. Compl. ¶ 39.[15] Most Plaintiffs' declarations support the existence of such a practice affecting servers.  *See* Calvillo Decl. ¶¶ 7, 13; Krohn Decl. ¶¶ 6, 11; Pitt Decl. ¶¶ 7, 12; Stephens Decl. ¶¶ 7, 14; Willig Decl. ¶¶ 6, 11.  As Defendants correctly point out, there are two exceptions.  *See* Defs.' Opp'n at 16.  First, Plaintiff Clark's declaration supports the existence of this practice at only one of the restaurants where she worked (Farmers & Distillers), not the other (Founding Farmers DC).  *See* Clark Decl. ¶¶ 1, 7.  This defect is not fatal, however, because Plaintiff Pitt worked at the same two restaurants and attests to the existence of the same policy at both.  *See* Pitt Decl. ¶¶ 1, 7.

More significantly, Plaintiff Storey, the only declarant who worked at the Founding Farmers Tysons restaurant in Virginia, describes an entirely different policy.  According to Plaintiff Storey, servers at the Virginia restaurant are not necessarily denied compensation for time spent in pre-shift meetings, but merely have to arrive ten minutes beforehand to clock in. *See* Storey Decl. ¶ 6.  But the core element of Plaintiffs' allegations regarding pre-shift meetings is that employees were not paid for their time.  *See* Am. Compl. ¶¶ 39, 56; *see also* Pls.' Br. at 6 ("During these pre-shift hours, defendants pay no wages . . . .").  In light of Plaintiff Storey's

---

[15] The Amended Complaint does not clearly assert a minimum wage claim related to this alleged practice.  *See* Am. Compl. ¶¶ 52-55 (listing alleged minimum wage violations without mentioning uncompensated pre-shift meetings).  Rather, the Amended Complaint appears to categorize this practice as an overtime violation.  *See id.* ¶ 56.  However, it appears that a minimum wage claim could arise from this practice, if Plaintiffs were to show that the practice caused employees' average hourly wage (calculated on a workweek basis) to fall below the minimum wage.  *See Freeman v. MedStar Health Inc.*, 185 F. Supp. 3d 30, 35 & n.6 (D.D.C. 2016).  Because both Plaintiffs and Defendants have assumed for purposes of this motion that Plaintiffs do assert a minimum wage claim related to pre-shift meetings, *see* Pls.' Br. at 6; Defs.' Opp'n at 15-17, the Court does the same.

declaration, that element is lacking for the Virginia employees.  Accordingly, conditional certification will not be granted with respect to uncompensated pre-shift meetings at Founding Farmers Tysons in Virginia.

Defendants' remaining arguments are unconvincing.  Defendants seek once again to create issues of fact that are unfit for resolution at this stage, arguing that they did in fact pay employees for all hours worked, *see* Defs.' Opp'n at 15 (citing Simons Decl. ¶ 20), and that variations in pre-shift meetings preclude certification, *see id.* at 16 (citing Smith Decl. ¶ 6; Garcia Decl. ¶ 7).  Because Plaintiffs' declarations clearly describe a uniform policy of requiring servers to attend pre-shift meetings without compensation at the D.C. and Maryland locations, such arguments are unavailing at this stage of the litigation.  Accordingly, Plaintiffs have met their burden on the pre-shift meetings policy at those locations.

### (d)      Pre- and Post-Shift Work Policy

The Amended Complaint and Plaintiffs' declarations state that servers were required to perform a variety of non-tipped "close-out" duties after their shifts, for which servers were allegedly not paid the minimum wage required by law.  *See* Am. Compl. ¶¶ 40, 54; Calvillo Decl. ¶¶ 8, 13; Clark Decl. ¶¶ 8, 11; Krohn Decl. ¶¶ 7, 11; Pitt Decl. ¶¶ 8, 12; Stephens Decl. ¶¶ 8, 14; Storey Decl. ¶¶ 7, 11; Willig Decl. ¶¶ 7, 11.  Plaintiffs also assert that they did not receive tips during the pre-shift meetings discussed above.  *See* Calvillo Decl. ¶¶ 7, 13; Clark Decl. ¶ 7, 13; Krohn Decl. ¶¶ 6, 11; Pitt Decl. ¶¶ 7, 12; Stephens Decl. ¶¶ 7, 14; Storey Decl. ¶¶ 6, 11; Willig Decl. ¶¶ 6, 11.  Defendants argue that certification is unwarranted due to variations in Plaintiffs' declarations, such as the fact that some Plaintiffs do not describe having rolled silverware or polished ramekins.  *See* Defs.' Opp'n at 14.  Defendants also cite their own

declarations, which explain that servers were not required to roll silverware at all of the restaurants. *See id.* (citing Simons Decl. ¶ 16).

Once again, Defendants have pointed only to minor variations in the alleged policy of requiring Plaintiffs to perform non-tipped work, which appear on their face to be insufficient to defeat conditional certification. *See Blount*, 945 F. Supp. 2d at 94-95 (granting conditional certification despite variations in meal breaks at issue). Defendants argue that these variations may be legally significant because Plaintiffs must plead that they were engaged in "dual jobs" under relevant Department of Labor regulations, 29 C.F.R. § 531.56(e), and this analysis will depend on the exact nature of each class member's post-shift duties and hours. *See* Defs.' Opp'n at 15. The Court is unconvinced. Defendants do not explain how the minor variations described—such as whether each Plaintiff rolled silverware—are likely to matter in the "dual jobs" analysis. Moreover, at this stage, "[p]laintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members." *Ayala*, 12 F. Supp. 3d at 170 (quoting *Grayson*, 79 F.3d at 1096). Plaintiffs' declarations are similar enough to withstand scrutiny at this stage. Of course, Defendants will have the opportunity to probe this issue further during discovery and to move for decertification if they believe it is warranted.[16]

In support of their position, Defendants cite *Diaz v. Electronics Boutique of America, Inc.*, No. 04-cv-0840E (SR), 2005 WL 2654270 (W.D.N.Y. Oct. 15, 2005), but that case is distinguishable. In *Diaz*, a retail employee had allegedly been required to perform uncompensated post-shift work, often for over an hour per day. *See id.* at *2. The court declined to grant conditional certification because the employee had not established that any other stores

---

[16] Here too, it is possible that this allegation may never reach the decertification phase, because Defendants' Motion for Partial Judgment on the Pleadings, ECF No. 23, remains outstanding and challenges the sufficiency of Plaintiffs' "dual jobs" allegations.

followed a similar practice.  *See id.* at *5.  By contrast, Plaintiffs in this case have made a

showing, however modest, that a common policy of requiring servers to perform similar non-

tipped pre-shift and close-out work existed across all five restaurants.[17]  Accordingly, Plaintiffs

have met their burden with respect to the alleged policy of requiring servers to perform non-

tipped pre-shift and post-shift work.  Moreover, they have done so at all five restaurants.  Thus,

the pre-shift work at the Virginia restaurant is properly included in this claim related to non-

tipped work, even though—as discussed above—Plaintiffs have not met their burden on their

claim that pre-shift work at the Virginia restaurant was uncompensated.

### (e)      Tip-Pool Policy

The Amended Complaint alleges that Plaintiffs were required to pool tips "with staff who

do not customarily and regularly receive tips and gratuities, including their managers."  Am.

Compl. ¶ 44.  Six Plaintiffs' declarations contain the statement (which overlaps with, but is

different from, the allegation in the Amended Complaint) that Plaintiffs and other servers pooled

their tips with "bartenders, bussers, runners, and stockers."  Calvillo Decl. ¶¶ 9, 13; Clark Decl.

¶¶ 9, 11; Krohn Decl. ¶¶ 8, 11; Pitt Decl. ¶¶ 9, 12; Stephens Decl. ¶¶ 9, 14; Storey Decl. ¶¶ 8, 11.

In addition, Plaintiff Willig (who, like several of the other named Plaintiffs, worked at Farmers

& Distillers), states that she and other servers shared tips with "bussers, runners, pastry workers,

and stockers."  Willig Decl. ¶¶ 8, 11.

Defendants argue that the discrepancy between Plaintiff Willig's and the other Plaintiffs'

declarations suffices to defeat conditional certification.  *See* Defs.' Opp'n at 21.  The Court

---

[17] In addition, several opinions have questioned the persuasive value of the *Diaz* decision.  *See, e.g., Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 329 (S.D.N.Y. 2010) (noting that *Diaz* "seem[s] to be against the weight of authority" (alteration in original) (quoting *Francis v. A&E Stores, Inc.*, No. 06-cv-1638 (CS) (GAY), 2008 WL 4619858, at *3 n.3 (S.D.N.Y. Oct. 16, 2008))).

disagrees.  The declarations all agree that "bussers," "runners," and "stockers" were included in the tip pool.  The common inclusion of "stockers" is particularly significant, because at least one court has determined that stockers may be ineligible to participate in tip pools.  *See Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 132 (S.D.N.Y. 2014) (declining to grant summary judgment for defendants on claim that "sushi chefs and stockers" were improperly included in tip pool).  Accordingly, to the extent that Defendants argue that possible variations in the makeup of the tip pool will result in individualized inquiries, *see* Defs.' Opp'n at 21-22, that argument fails at this stage.

Defendants also complain that Plaintiffs are inconsistent in describing the size of their contributions to the tip pool.  *See id.* at 22.  But that variation is immaterial, because the gravamen of Plaintiffs' claim is the *fact* that tips were shared improperly—not the *size* of employees' contributions to the pool.  *See* Am. Compl. ¶ 55; *see also Frebes v. Mask Rests., LLC*, No. 13-cv-3473, 2014 WL 1848461, at *3 (N.D. Ill. May 8, 2014) (granting conditional certification despite varying size of contributions to tip pool).  Defendants also dispute the accuracy of Plaintiffs' declarations on the size of these contributions.  *See* Defs.' Opp'n at 22 (citing Simons Decl. ¶ 17).  Once again, such factual disputes are not fit for resolution at this stage.  Therefore, Plaintiffs have met their burden with respect to the alleged tip pool policy.[18]

---

[18] Defendants also argue in a footnote that Plaintiffs' declarations deviate too widely from the Amended Complaint.  *See* Defs.' Opp'n at 21 n.10.  It is true that Plaintiffs' declarations have failed to support the allegation that tips were pooled with "managers," and so Plaintiffs may not include the alleged sharing of tips with "managers" in their notice to putative class members.  It appears that Plaintiffs' proposed notice already omits sharing with managers.  *See* Pls.' Br., Ex. A, ECF No. 14-1.  Nonetheless, as explained above, Plaintiffs do set forth facts that could potentially support an allegation that tips were pooled "with staff who do not customarily and regularly receive tips and gratuities."  Am. Compl. ¶ 44.

(f)      "Homework" Policy

Plaintiffs' declarations state that they were required to perform uncompensated daily homework during a "training" period that covered their first two weeks of work.  *See, e.g.*, Calvillo Decl. ¶ 11.  As Defendants justifiably complain, this allegation is absent from Plaintiffs' Amended Complaint.  *See* Defs.' Opp'n at 18.  Plaintiffs' "attempt to broaden the scope of this action through new allegations of misconduct raised for the first time in the declarations filed in support of conditional certification is troubling, as '[i]t is patently unfair to expect a defendant to respond to a theory of liability that shifts with each response.'"  *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-cv-470-T-27TBM, 2012 WL 6196035, at *2 n.8 (M.D. Fla. Dec. 12, 2012) (alteration in original) (quoting *Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *5 (E.D. Wis. Sept. 11, 2008)).

Plaintiffs' response is, in essence, that they are obligated only to plead their general claim that they were denied a minimum wage, leaving them free to add whatever new facts and theories they wish at conditional certification.  *See* Pls.' Reply at 14 n.3.  Courts in this Circuit have been more demanding.  For example, in *Castillo*, the plaintiffs' complaint asserted that they were suing on behalf of a putative class of D.C.-based employees.  *See* 517 F. Supp. 2d at 446.  At conditional certification, the *Castillo* plaintiffs sought to expand this class to include employees in surrounding jurisdictions.  *See id.*  The court denied that request, holding the plaintiffs to their pleadings.  *See id.*

While Plaintiffs do not seek to expand the scope of the proposed class, they do seek to add a new and distinct factual theory with little foundation in their operative complaint.  Not only does the Amended Complaint fail to assert any allegation regarding "homework," it also contains no description of the "training" period during which the homework was allegedly

assigned.  To proceed as Plaintiffs propose would be unfair to Defendants, who have had no opportunity to test the sufficiency of these new allegations at the pleading stage.  Accordingly, conditional certification will not be granted with respect to Plaintiffs' "homework" allegations.

### (g)    Conclusion

In summary, the Court will grant conditional certification with respect to Plaintiffs' minimum wage claim, except that certification is not granted with respect to (i) Plaintiffs' allegations regarding uncompensated pre-shift meetings at the Founding Farmers Tysons restaurant in Virginia or (ii) the alleged "homework" policy.

### 3.    Overtime Claim

In their Amended Complaint, Plaintiffs have alleged two policies underlying their overtime claim: (a) that Defendants counted hours worked at each restaurant separately to avoid paying overtime; and (b) that Defendants failed to compensate employees for pre-shift meetings, meaning that employees were denied overtime pay for those meetings in weeks when they worked at least 40 hours.  *See* Am. Compl. ¶ 56; Pls.' Br. at 7-8.  In addition, Plaintiffs' motion papers assert a right to overtime pay arising from Defendants' alleged policy of not paying for time spent on homework.  *See* Pls.' Br. at 8.  Once again, the Court will consider each alleged policy in turn.

### (a)    Policy Regarding Aggregation of Hours Across Restaurants

Among all the Plaintiffs who submitted declarations, only Plaintiff Stephens (who worked at Farmers & Distillers and Farmers Fishers Bakers) has confirmed the alleged policy of counting hours worked at different restaurants separately.  *See* Stephens Decl. ¶ 11.  Plaintiff Stephens reports having worked overtime approximately a quarter of the time.  *See id.* ¶ 10.  In addition, Plaintiff Stephens states that other servers who worked at those two restaurants were

subject to that policy.  *See id.* ¶ 14.  Three other Plaintiffs also worked at more than one restaurant (in each case, a combination of Farmers & Distillers and one other restaurant), but they fail to report any such policy in their declarations.  *See* Calvillo Decl. ¶ 1; Clark Decl. ¶ 1; Pitt Decl. ¶ 1.  Defendants vigorously deny Plaintiff Stephens' allegations.  They claim that they paid overtime to all employees as required by law.  *See* Defs.' Opp'n at 20 (citing Simons Decl. ¶ 21).  They also claim that Plaintiff Stephens worked overtime across both restaurants only once while employed there and received overtime pay for that week, properly taking into account all hours worked.  *See id.* (citing Guilford Decl. ¶ 4).

For this alleged policy, a careful reading of Plaintiff Stephens's declaration reveals that it does not provide more than "pure speculation" regarding the existence of similarly situated employees, which is insufficient.  *Ayala*, 12 F. Supp. 3d at 170 (quoting *Symczyk*, 656 F.3d at 193).  "[W]hen a plaintiff submits only one affidavit, without corroboration, the level of detail in that affidavit becomes particularly important in evaluating the sufficiency of the plaintiff's showing."  *Gomez v. Kitchenette 123 Inc.*, No. 16-cv-3302 (AJN), 2017 WL 4326071, at *4 (S.D.N.Y. Sept. 5, 2017).  Here, in conclusory fashion, Plaintiff Stephens states that "other servers" were subject to the same aggregation-of-hours policy, but does not detail whether that statement rests upon specific personal observations or conversations with other employees, or is simply a rumor.  Moreover, the affidavit states only that other servers were "subject to" this policy, but not that those other servers actually had their overtime pay unlawfully reduced when the policy was applied to them.  In short, the affidavit contains nothing from which the Court can conclude that the asserted existence of similarly affected plaintiffs is more than "pure speculation."  Under these circumstances, and even in light of the low bar Plaintiffs must meet at this stage, this deficiency is fatal.  Courts have routinely denied conditional certification where

plaintiffs have advanced only one affidavit that speaks in only conclusory terms about the existence of other, similarly situated employees. *See, e.g.*, *Munoz v. Big Valley Inc.*, 915 F. Supp. 2d 46, 49-51 (D.D.C. 2013); *Huertero-Morales v. Raguboy Corp.*, No. 17-cv-2429 (JCF), 2017 WL 4046337, at *3 (S.D.N.Y. Sept. 12, 2017); *Medley v. S. Health Partners, Inc.*, No. 1:17-cv-003, 2017 WL 3485641, at *6-8 (M.D. Tenn. Aug. 15, 2017); *Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-cv-60 (ILG), 2013 WL 5132023, at *5-7 (E.D.N.Y. Sept. 12, 2013).

The court's decision in *Galloway* provides a helpful counterpoint.  There, a single declarant explained that she knew many other employees with the same job title and specifically described how they had been the victims of the same misconduct as she had.  263 F. Supp. 3d at 154.  The court determined that this declaration was "not entirely conclusory" because it specifically attested to the declarant's "personal knowledge" that other employees were affected. *Id.* at 157.  Thus, the court concluded, the plaintiffs' lone declaration "barely" satisfied the standard for conditional certification. *Id.*  As discussed above, Plaintiff Stephens' declaration does not specify that the statement about other servers is based on personal knowledge, and states only in conclusory terms that they were "subject to" the same policy.  Moreover, unlike the declaration at issue in *Galloway*, it does not specifically say that the policy was applied to these other employees in such a way as to render them similarly situated by unlawfully reducing their overtime pay.  It thus falls short of the declaration submitted in *Galloway*, which, as the court in that case emphasized, represents the bare minimum to merit conditional certification.  Finally, unlike the plaintiffs in *Galloway*, Plaintiffs here have submitted multiple declarations from other servers who were in a position to know about this alleged practice, but they fail to corroborate it. Plaintiffs have thus failed to establish that their evidence rests on anything more than

speculation, and so conditional certification will be denied with respect to the alleged aggregation-of-hours policy.

**(b)      Uncompensated Pre-Shift Meetings Policy**

The Court has already analyzed Plaintiffs' allegations regarding uncompensated pre-shift meetings in connection with their minimum wage claim, and concluded that those allegations are fit for certification except as they relate to the Founding Farmers Tysons restaurant in Virginia. The Court sees no reason to reach a different outcome in the overtime context.

Defendants make the additional argument that Plaintiffs fail to allege how many hours they worked per week, and therefore "have not even stated a colorable claim that if they had been clocked in during these pre-shift meeting times (which they only allege last 15-20 minutes), their hours would have gone into overtime during that week." Defs.' Opp'n at 17.  That argument is better suited to a motion to dismiss than conditional certification, but in any event, it is meritless.  "[T]o state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *accord Akinsinde v. Not-For-Profit Hosp. Corp.*, 216 F. Supp. 3d 33, 41-42 (D.D.C. 2016). Plaintiffs allege that the uncompensated pre-shift meetings occurred before "every shift." *E.g.*, Calvillo Decl. ¶ 7.  Taking that allegation as true, it must also be true that, whenever an employee worked overtime in a given week, that employee also spent uncompensated time in excess of 40 hours at pre-shift meetings during that week.  Here, three Plaintiffs have stated that they worked overtime a third to a quarter of the time. *See* Calvillo Decl. ¶ 10; Stephens Decl. ¶ 10; Storey Decl. ¶ 9.  Those Plaintiffs are similarly situated to any other members of the putative class who worked overtime.  Moreover, Defendants state that they pay overtime when it

31

is required, implicitly conceding that some employees do work overtime.  *See* Simons Decl. ¶ 21; Guilford Decl. ¶ 3.  Accordingly, the Court will grant conditional certification of the overtime claim as it relates to pre-shift meetings, except at Founding Farmers Tysons.

### (c)  Homework Policy

As explained above in the context of Plaintiffs' minimum wage claim, the Court will not grant certification with respect to the alleged "homework" policy, because Plaintiffs did not include that policy in their Amended Complaint.  The same result applies here.

### (d)  Conclusion

To summarize, the Court will grant conditional certification with respect to Plaintiffs' overtime claim only as it relates to allegations regarding uncompensated pre-shift meetings. Certification of the overtime claim is denied in all other respects, including with respect to Plaintiffs' aggregation-of-hours and homework allegations.  As a result, the Court will not certify any overtime claim for employees who worked only at the Founding Farmers Tysons restaurant.

### 4.  Sick Leave Claim

The Amended Complaint alleges that Defendants denied employees sick leave in violation of D.C. law, and threatened to fire employees who did take sick leave or who complained about Defendants' policy.  *See* Am. Compl. ¶¶ 42, 77-78.  Six named Plaintiffs declare that they were denied sick leave, and three expressly state that they were ordered to come to work when they requested sick leave (although none reports having been threatened with termination).  *See* Calvillo Decl. ¶ 12; Clark Decl. ¶ 10; Krohn Decl. ¶ 9; Pitt Decl. ¶ 11; Stephens Decl. ¶ 13; Willig Decl. ¶ 10.[19]

---

[19] The declaration of Plaintiff Storey, who did not work in any of Defendants' D.C. restaurants, is silent on Defendants' sick leave policies.

Defendants have pursued several lines of attack, all of which are unavailing at this stage.[20]  Defendants, relying on their own affidavits, claim that employees were afforded sick leave and, in many cases, were paid out for sick leave when their employment ended.  *See* Defs.' Opp'n at 24 (citing Guilford Decl. ¶¶ 10, 12).  Once again, Defendants' attempt to raise a factual dispute is misplaced at this stage of the proceedings.  Moreover, Defendants' claim that they paid out unused sick leave is not on point, because Plaintiffs' allegation is that employees were denied the opportunity to take sick leave when they asked for it, not that Defendants failed to pay out unused sick leave.  *See* Am. Compl. ¶¶ 42, 77-78.

Defendants also argue that Plaintiffs have not made out a claim, because D.C. law does not require employers to grant sick leave during the first 90 days of employment, and Plaintiffs have not alleged when they requested sick leave.  *See* Defs.' Opp'n at 24.  Defendants have cited no authority for the proposition that Plaintiffs must plead their sick leave claim with this level of particularity.  Rather, case law suggests that such specificity is not required.  *See Alvarez-Soto v. B. Frank Joy, LLC*, 258 F. Supp. 3d 615, 626 (D. Md. 2017) (accepting as sufficient allegations that the plaintiffs were eligible for and denied sick leave, despite failure to plead compliance with Sick Leave Act's notice requirement).  Defendants will be free to revisit this argument at summary judgment.

---

[20] As mentioned above, none of the declarations states that other servers were subject to the same sick leave policy.  *See* Calvillo Decl. ¶ 13; Clark Decl. ¶ 11; Krohn Decl. ¶ 11; Pitt Decl. ¶ 12; Stephens Decl. ¶ 14; Willig Decl. ¶ 11.  That may not necessarily be fatal to certification of these claims; at least some courts have granted certification based on declarations from multiple employees affected by the alleged unlawful policy.  *See Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 851-53 (N.D. Ill. 2017).  Ultimately, the Court will not deny certification of the sick leave claims on this ground, because Defendants have not raised this argument.  *See* Defs.' Opp'n at 24-25.  "Ours is an adversary system, and it is up to the party seeking relief to sufficiently develop his arguments."  *United States v. Hughes*, 514 F.3d 15, 18 (D.C. Cir. 2008) (quoting *United States v. South*, 28 F.3d 619, 629 (7th Cir. 1994)).

Finally, Defendants assert that the sick leave claim will require individualized determinations, because some employees (including one of the opt-in plaintiffs) did not work long enough to become eligible for sick leave, while others may never have requested sick leave after the statute's 90-day probation period. *See* Defs.' Opp'n at 24-25 (citing Guilford Decl. ¶¶ 7-9). The Court is not convinced that such differences preclude conditional certification, because the key issue is whether Defendants had a common policy of denying sick leave to eligible employees, not how individual employees were affected. *Cf. Blount*, 945 F. Supp. 2d at 95 (granting conditional certification with respect to allegedly unlawful policy despite immaterial variations in how it was applied). Accordingly, conditional certification will be granted with respect to the sick leave claim. Of course, Defendants may move for decertification after discovery if they believe that the differences among class members are too stark to permit classwide adjudication.

### 5.      Interest from Other Putative Class Members

Defendants argue in a footnote that a purported "lack of desire to join this lawsuit among putative collective action members" is sufficient basis for denying Plaintiffs' motion. Defs.' Opp'n at 5 n.3. While the Court is not required to "address an argument raised only cursorily in a footnote," *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 247 F. Supp. 3d 76, 101 (D.D.C. 2017) (quoting *Armstrong v. Geithner*, 608 F.3d 854, 858 n.** (D.C. Cir. 2010)), Defendants' argument would be meritless even if it were properly before the Court. The rule that Defendants cite, which requires plaintiffs to demonstrate interest from absent putative class members prior to conditional certification, ultimately derives from an Eleventh Circuit decision, *Dybach v. Florida Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991). No court in this Circuit appears to have adopted the *Dybach* rule, which has received a decidedly

mixed reception in other courts. *See, e.g.*, *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 549 (E.D. Va. 2009) ("It does not appear that any courts within the Fourth Circuit have adopted this relatively stringent test."); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) ("[T]here is no requirement in this circuit that a certain number of Covered Employees opt-in before a court can conditionally certify a class."); *see also Galloway*, 263 F. Supp. 3d at 157 (declining to require plaintiffs to produce affidavits from absent class members who intend to join lawsuit). Moreover, even if the *Dybach* rule did apply, Plaintiffs would have satisfied it because, in addition to the eight named Plaintiffs, five other employees have opted in. *See* ECF Nos. 9, 25 (opt-in plaintiffs' consents); *cf. Tyler v. Payless Shoe Source, Inc.*, No. 2:05-cv-33F(WO), 2005 WL 3133763, at *3 (M.D. Ala. Nov. 23, 2005) (finding the *Dybach* rule satisfied where five potential plaintiffs had opted in, even though two had not worked at the employer during the relevant time period). Defendants cite only distinguishable cases where plaintiffs lacked any evidence (apart from conclusory statements) that other employees were interested in joining. *See, e.g.*, *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165-66 (D. Minn. 2007). Therefore, this argument fails.

Plaintiffs also cite several cases from the Eleventh Circuit for the proposition that the filing of opt-in consents is sufficient to justify conditional certification. *See* Pls.' Br. at 13-14. Plaintiffs misread these cases, which, applying the *Dybach* rule, hold that a showing of interest from putative class members is necessary but not sufficient to justify conditional certification. Rather, the Eleventh Circuit (like courts in this Circuit) requires named plaintiffs to show that they are similarly situated to absent class members. *See, e.g.*, *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1269-75 (M.D. Ala. 2004). Therefore, these cases do not alter the analysis set forth above.

6.        **Putative Class Period**

The statute of limitations for Plaintiffs' D.C.-law claims is three years.  D.C. Code § 32-1308(c)(1).  The statute of limitations for Plaintiffs' FLSA claims is two years, which is extended to three years for willful violations (as Plaintiffs have alleged in this case).[21]  29 U.S.C. § 255(a).  The filing of the complaint does not toll the limitations period for opt-in plaintiffs' FLSA claims; the statute of limitations continues to run until they affirmatively join the action.  *See* 29 U.S.C. § 256(b); *Galloway*, 263 F. Supp. 3d at 158.  Plaintiffs assume that the same is true for their D.C.-law claims.  *See* Pls.' Br. at 1-2.

Defendants argue that, because no Plaintiff worked at the restaurants before September 2015, they should not be able to represent a class that extends before that time.  *See* Defs.' Opp'n at 26 (citing Guilford Decl. ¶ 11).  Plaintiff Storey asserts in her declaration that she began working at Founding Farmers Tysons at an earlier date, in March 2015.  *See* Storey Decl. ¶ 1.  But regardless of the exact start date, Defendants point to no authority holding that the named plaintiff in a collective action must have been employed throughout the entire putative class period.  By contrast, as Plaintiffs rightly point out, "dates of employment" do "not necessarily create dissimilarity under the FLSA."  *Hallissey v. Am. Online, Inc.*, No. 99-cv-3785 (KTD), 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008); *see also Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 352 (S.D.N.Y. 2017) ("[I]t makes little sense to hold that simply because there is *no* [temporal] overlap between the representative plaintiff's recoverable wages and the opt-in plaintiff's recoverable wages that conditional certification is inappropriate.").  That is particularly true here, where neither Plaintiffs' declarations nor Defendants' submissions contain

---

[21] Defendants have not argued that Plaintiffs' willfulness allegations are implausible.  *See* Defs.' Opp'n at 26.

any suggestion that the policies at issue changed from mid-2014 onward. *Cf. Viriri*, 320 F.R.D. at 353 (holding allegations of common policy justified certification despite lack of temporal overlap between named plaintiff and putative class members). Accordingly, any opt-in plaintiffs will be allowed to assert claims extending as far back in time as each relevant statute of limitations allows.

**B.     Sub-Classes**

Having addressed the substance of the conditional-certification analysis, the Court now turns to administrative matters, starting with the use of sub-classes. Sub-classes represent an appropriate tool in collective actions to manage classes that span multiple jurisdictions and involve claims under the laws of different states. *See Dinkel*, 880 F. Supp. 2d at 58. Here, Plaintiffs bring their claims on behalf of servers working in D.C., Maryland, and Virginia. Those claims arise under federal, D.C., and Maryland substantive law. Each jurisdiction also has somewhat different procedural mechanisms. Moreover, as discussed above, servers who worked only in the Virginia restaurant are not similarly situated to Plaintiffs with respect to either the overtime claim or the minimum wage claim insofar as it relates to uncompensated pre-shift meetings. An overview of these differences suffices to show why establishing a separate sub-class for each jurisdiction where employees worked is prudent for case-management purposes:

- District of Columbia Sub-Class:

    o  *Substantive Claims:* Minimum wage, overtime, and sick leave claims under the FLSA and D.C. Law

    o  *Procedural Aspects:* FLSA collective action, D.C. collective action (with possible conversion into a D.C. class action)

- Maryland Sub-Class:

    o  *Substantive Claims:* Minimum wage and overtime claims under the FLSA and Maryland law

37

- o   *Procedural Aspects:*  FLSA collective action, Maryland putative class action

- Virginia Sub-Class:

  - o   *Substantive Claims:*  Minimum wage claim under the FLSA, with no claim relating to uncompensated pre-shift meetings

  - o   *Procedural Aspects:*  FLSA collective action

These sub-classes likely overlap, because some putative class members may have worked in multiple jurisdictions.  For example, Plaintiff Calvillo worked in D.C. and Maryland.  *See* Calvillo Decl. ¶ 1.

> C.   **Notice**

>> 1.   **Means of Notice**

The parties dispute the proper means of notifying class members, and how long the opt-in period should last.  Plaintiffs seek to discover the names, mailing addresses, cell phone numbers, and email addresses of potential opt-in plaintiffs.  *See* Pls.' Br. at 21.  Defendants argue that they should not have to provide email addresses and phone numbers, particularly given that the matter has already received some publicity via traditional and social media.  *See* Defs.' Opp'n at 27.

Decisions in this Circuit have reached different conclusions on whether email addresses and phone numbers are discoverable in connection with collective-action notice procedures.  Citing privacy concerns, some decisions have denied requests for telephone numbers of putative class members, at least absent a showing of need.  *See Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 7 (D.D.C. 2010); *Blount*, 945 F. Supp. 2d at 97 (denying disclosure of phone numbers in the absence of "particularized need").  Others have declined to provide email addresses absent a showing of need.  *See Galloway*, 263 F. Supp. 3d at 159 (rejecting request that plaintiffs be given email addresses of putative class members, but allowing parties to revisit the issue if authorized forms of notice proved insufficient).  But some decisions have suggested that production of

email and telephone contact information is now "nearly as common" as production of names and mailing addresses. *Eley*, 2015 WL 5611331, at *3; *see also Ayala*, 12 F. Supp. 3d at 172 (requiring production of phone numbers where defendants "raise[d] no special concerns" and many class members did "not speak English as a first language"). The trend appears to be toward ordering the production of at least some of this information. *See Freeman v. MedStar Health Inc.*, 187 F. Supp. 3d 19, 32-33 (D.D.C. 2016) (declining to order production of phone numbers due to privacy concerns, but explaining that, with "respect to dissemination by e-mail, the Court acknowledges that the availability and use of certain technological media has evolved since . . . four years ago," and ordering the parties to meet and confer regarding the appropriate scope of email notice).

Here, Plaintiffs' primary argument is that electronic notice is better calculated to reach employees who may have moved, which they argue is especially likely here given the itinerancy of many employees in the restaurant industry. *See* Pls.' Br. at 10-11. Defendants have not shown that there are any unusually strong privacy interests in this case, although they do suggest that many class members already have received notice through newspapers or online. *See* Defs.' Opp'n at 27. The Court agrees with Plaintiffs that some form of electronic notice is justified in this case, particularly in light of the special characteristics of the restaurant industry. *See Bhumithanarn*, 2015 WL 4240985, at *5 (granting use of notice by text message "given the high turnover characteristic of the restaurant industry"). Nonetheless, the Court is concerned that, even in the social-media era, unsolicited phone calls and text messages remain a significant intrusion on individuals' privacy. *See Freeman*, 187 F. Supp. 3d at 32-33 (declining to allow notice by telephone for privacy reasons, despite recognizing that technological change makes email notice appropriate); *cf. Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014)

("[T]he nature of cell phones renders the restriction of unsolicited text messaging all the more necessary to ensure [residential] privacy."), *aff'd*, 136 S. Ct. 663 (2016).  The Court will therefore order defendants to produce the email addresses, but not telephone numbers, of putative class members at this time.

Plaintiffs' motion also requested that the Court order Defendants to send notice with employees' paychecks.  *See* ECF No. 13 at 2.  Plaintiffs do not mention this request in their opening brief or their reply.  Defendants oppose this request, which they claim would unnecessarily lend their imprimatur to the lawsuit, *see* Defs.' Opp'n at 27-28, and cite authority suggesting defendants should not ordinarily be saddled with the costs of mailing notice with paychecks, *see Calderon v. Geico Gen. Ins. Co.*, No. RWT 10-cv-1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011).  Here, the Court finds that Plaintiffs' half-hearted (and perhaps abandoned) request is outweighed by concern that this form of notice "could imply Defendants' endorsement of the Notice or lead to situations in which Defendants were the ones answering questions about the Notice or lawsuit."  *Ayala*, 12 F. Supp. 3d at 173.

Accordingly, the Court will order Defendants' to produce the names, mailing addresses, and email addresses of members of the certified sub-classes (as limited by this Opinion) within twenty days of the date of entry of this Order.  Defendants are not required to produce telephone numbers or to send notice with paychecks.  If Plaintiffs discover as notice proceeds that the authorized forms of communication are inadequate, they may seek further relief from the Court.

The parties also disagree over the length of the opt-in period.  Plaintiffs initially proposed a ninety-day opt-in period, which they revised to sixty days in their reply.  *See* Pls.' Reply at 21.  Defendants propose thirty days.  *See* Defs.' Opp'n at 27.  The Court agrees with Plaintiffs that thirty days is unreasonably short.  *See Cryer v. InterSolutions, Inc.*, No. 06-cv-2032 (EGS), 2007

WL 1053214, at *3 (D.D.C. Apr. 7, 2007) (finding that a "ninety-day period is more in keeping with the time periods used in other similar class actions in this Court than the defendants' proposed thirty-day period"). The opt-in period will therefore last for sixty days.

### 2. Form of Notice

Plaintiffs' proposed form of notice (Pls.' Br., Ex. A, ECF No. 14-1) will plainly require revision to conform to the rulings set forth above. Therefore, the parties shall meet and confer regarding a revised form of notice. *See, e.g.*, *Dinkel*, 880 F. Supp. 2d at 59. The parties should carefully consider how to proceed in light of the sub-classes established above, including whether a single form of notice for all class members remains feasible. The Court urges the parties to work expeditiously and cooperatively to make a joint submission to the Court, but reminds the parties that the Court is available to assist in promptly resolving any disputes. The parties shall submit a revised form of notice by the deadline set forth below.

## IV. Conclusion and Order

For the reasons set forth above, it is hereby **ORDERED** that Plaintiffs' conditional-certification motion (ECF No. 13) is **GRANTED IN PART** and **DENIED IN PART** as set forth in foregoing Opinion, and Defendants' motion for leave to file a surreply (ECF No. 27) is **DENIED**. It is **FURTHER ORDERED** that the parties shall meet, confer, and submit to the Court a revised form of notice consistent with the foregoing Opinion by February 9, 2018.


    **SO ORDERED.**


                                        /s/ Timothy J. Kelly
                                        TIMOTHY J. KELLY
                                        United States District Judge


Date: January 31, 2018