# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHAYN STEPHENS *et al.*,

      *Plaintiffs*,

    v.

FARMERS RESTAURANT GROUP *et al.*,

      *Defendants*.

Civil Action No. 17-1087 (TJK)

## MEMORANDUM OPINION AND ORDER

Plaintiffs in this action, who worked at several restaurants operated by Defendants in Virginia, Maryland, and the District of Columbia, bring claims under the Fair Labor Standards Act (FLSA) and District of Columbia and Maryland law, alleging Defendants failed to comply with federal and state minimum-wage, overtime-pay, and sick-leave requirements. The parties have reached a potential settlement agreement resolving all claims, and they now seek preliminary approval of that agreement from the Court. As such, before the Court is Plaintiffs' Consent Motion for Certification of the Rule 23 Class Action for Settlement Purposes, Approval of Notices, and Preliminary Approval of the Settlement Agreement. ECF No. 56. For the reasons explained below, the motion will be granted.

## I.    Background

### A.    Factual and Procedural History

Farmers Restaurant Group and co-owners Daniel Simon and Michael Vucurevich (collectively, "Defendants") operate five restaurants in Virginia, Maryland, and the District of Columbia. ECF No. 5 ("Am. Compl.") ¶¶ 8–9. On June 7, 2017, six then-current and former employees of Defendants commenced this action, alleging Defendants violated various federal

and state labor laws. Plaintiffs' complaint, as amended, brings claims under the FLSA, the District of Columbia Minimum Wage Act (DCMWA), D.C. Code § 32-1001 *et seq.*, the District of Columbia Sick Leave Act (DCSLA), *id.* § 32-131, the Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law (MWPCL), *id.* § 3-501 *et seq. See* Am. Compl. ¶¶ 45–101.

On July 31, 2017, Plaintiffs filed a motion seeking conditional certification of a collective action for their FLSA, DCMWA, and DCSLA claims. ECF No. 13. Defendants opposed certification, ECF No. 22, and they also filed a motion for partial judgment on the pleadings, ECF No. 23. The Court granted Plaintiffs' motion on January 31, 2018, conditionally certifying Plaintiffs' proposed collective action and establishing three subclasses for District of Columbia, Maryland, and Virginia employees. *See Stephens v. Farmers Rest. Grp.*, 291 F. Supp. 3d 95 (D.D.C. 2018). Upon the Court's approval, Plaintiffs' counsel sent putative members of the collective action a notice of lawsuit, *see* ECF Nos. 34, 35, advising those individuals that they must provide written consent or "opt in" to the collective action, no later than April 28, 2018, in order to participate as a member of the collective action. According to Plaintiffs' counsel, a total of 119 individuals opted in to the collective action. *See* ECF No. 56-5 ("Elkin Decl.") ¶ 13.

On March 9, 2018, Plaintiffs sought certification of two classes covering their District of Columbia and Maryland state-law claims pursuant to Federal Rule of Civil Procedure 23. *See* ECF No. 36. During the course of discovery, however, the parties decided to enter mediation. Elkin Decl. ¶ 15. And on May 21, 2018, the Court referred the matter to the Court's mediation program. On July 24, 2018, the parties submitted a joint status report indicating that they had reached a potential settlement agreement and that they intended to submit that agreement to the Court for preliminary approval. ECF No. 55. Accordingly, the Court denied Plaintiffs' motion

for class certification and Defendants' motion for partial judgment on the pleadings without prejudice in anticipation of the parties' request for preliminary approval of their proposed settlement.

On August 21, 2018, Plaintiffs filed the instant consent motion. ECF No. 56. The motion requests that the Court (1) certify the proposed Rule 23 classes for settlement purposes; (2) preliminarily approve the proposed settlement agreement; (3) approve the proposed notices to class members of the settlement; (4) approve their proposed class representatives; (5) appoint Rust Consulting as the administrator of the settlement; and (6) appoint Molly Elkin, counsel for Plaintiffs, as class counsel. *Id.*

On November 6, 2018, the Court ordered supplemental briefing from the parties. *See* ECF No. 58. Specifically, the Court asked the parties to address whether the proposed class representatives adequately represented the absent Rule 23 class members during the settlement discussions, whether the proposed settlement sum and distribution of that sum reflect a fair resolution of Plaintiffs' claims against Defendants, and whether, as the settlement agreement contemplates, the absent Rule 23 class members who had not affirmatively opted in to the collective action can nonetheless be required to waive their FLSA claims if they do not affirmatively opt out of the Rule 23 settlement. The parties submitted their joint response addressing those questions on December 3, 2018. ECF No. 59 ("Supp. Memo.").

B.    The Settlement Terms

The parties have submitted a proposed settlement agreement, ECF No. 56-2 ("Agreement"), the pertinent terms of which are summarized below.

The two putative Rule 23 settlement classes, under Maryland and District of Columbia law, respectively, will consist of 862 current and former servers who worked in one of Defendants' restaurants in either Maryland or the District of Columbia between June 7, 2014,

and July 20, 2018. Agreement ¶ 1.2. The classes will also include those 119 individuals who have already opted in to the collective action, with the exception of those individuals who only worked in Defendants' Virginia locations.[1] *Id.*

Within five business days of certification of the Rule 23 classes and preliminary approval of the Agreement, a notice will be sent to all 862 putative class members describing the terms of the Agreement and their various rights and obligations. *Id.* ¶ 5.1; ECF No. 59-5 ("Am. R. 23 Notice"). Putative Rule 23 class members will have 45 days from the date the notices are mailed to opt out of the class action settlement. Agreement ¶ 5.3. A separate notice of settlement will be sent to those 119 individuals who opted in to the collective action. *Id.* ¶ 5.1; ECF No. 56-3 ("FLSA Notice").

Defendants have agreed to deposit a total of $1,490,000 in a settlement fund to be distributed as described herein. Agreement ¶ 9.3. Class counsel will receive an award of $388,484 in attorney's fees and $8,516 for litigation expenses, and the settlement administrator will be paid in an amount not to exceed $35,000 for its services. Agreement ¶¶ 10.3, 10.4. Each of the seven named plaintiffs, as representatives of the collective action and Rule 23 classes, will receive a service award of $5,000. *Id.* ¶ 10.5. The 119 individuals who opted in to the collective action will receive a total of $498,715, to be distributed to each individual based on the total number of weeks that he or she worked as a server during the applicable time period. *Id.* ¶¶ 10.6–.7. The remaining $524,285 will be allocated to the 862 putative Rule 23 class members and distributed to each individual who timely submits a claim form. *Id.* ¶¶ 10.6, 10.8. No

---

[1] Though the Rule 23 classes technically include those 119 individuals, excluding the Virginia servers, who opted in to the collective action, for ease and clarity the Court refers only to those class members who did not opt in to the collective action when discussing the "Rule 23 class members" or the "absent Rule 23 class members" over the course of this opinion, unless otherwise specified.

individual who opted in to the collective action will recover from this amount. *Id.* ¶ 1.2. And any unclaimed portion of the amount allocated to the Rule 23 class members will revert to Defendants. *Id.* ¶ 12.3.

Following preliminary approval of the settlement, and in accordance with Federal Rule of Civil Procedure 23(e)(2), the Court will conduct a fairness hearing to determine whether to finally approve the settlement agreement. Members of the collective action or the Rule 23 classes may submit written objections to the proposed settlement and present objections orally at the hearing. *Id.* ¶¶ 7.1, 7.2.

## II.    Legal Standard

Whether to preliminarily approve a proposed class action settlement lies within the sound discretion of the district court. *See Richardson v. L'Oréal USA, Inc.*, 951 F. Supp. 2d 104, 106 (D.D.C. 2013). When the parties are "seeking class certification and settlement at the same time, however," the agreement requires "'closer judicial scrutiny' than settlements that are reached after class certification." *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 23 (D.D.C. 2011) (quoting Manual for Complex Litigation (Fourth) § 21.612 (2004)). Courts "will generally grant preliminary approval of a class action settlement if it appears to fall 'within the range of possible approval' and 'does not disclose grounds to doubt its fairness or other obvious deficiencies.'" *Richardson*, 951 F. Supp. 2d at 106 (quoting *Trombley*, 759 F. Supp. 2d at 23).

## III.    Analysis

The Court's analysis will proceed in three parts. First, the Court will determine whether to provisionally certify the proposed Rule 23 classes for settlement purposes. Second, the Court will address whether to preliminarily approve the proposed settlement agreement. Third, the Court will outline further proceedings, including the distribution of notices and the scheduling of a fairness hearing.

## A. Provisional Class Certification

Parties seeking class certification must demonstrate that they meet the prerequisites of Rule 23(a) and fall within one of the categories described in Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Id.* at 613 (alteration in original) (quoting Fed. R. Civ. P. 23(a)). And under Rule 23(b)(3), by which the parties seek certification, "they must demonstrate (1) predominance of common questions of law and fact to the entire class, and (2) superiority of the class action method to other methods of adjudication for the controversy." *Trombley*, 826 F. Supp. 2d at 193.

### 1. Rule 23(a)

#### a. Numerosity

"Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members." *Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 114 (D.D.C. 2007). The parties represent that there are 962 Rule 23 class members, including the 119 who have opted in to the collective action and who worked in either Maryland or the District of Columbia, with 272 individuals in the Maryland class and 690 individuals in the District of Columbia class. *See* ECF No. 56-1 ("Memo.") at 25; Agreement, Exs. 1, 2. The Court therefore has no trouble concluding that the proposed classes satisfy the numerosity requirement.

### b.     Commonality

"To establish commonality under Rule 23(a)(2), a plaintiff must identify at least one question common to all members of the class." *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006). "Indeed, factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003). As the parties note, "all of the putative class members in both Rule 23 classes are or were Servers who, according to Plaintiffs, were subject to the same work policies and practices" underlying this lawsuit. Memo. at 26. Namely, according to Plaintiffs, class members "had the same job duties and responsibilities, had to buy clothing that the Servers assert were uniforms, had to buy 'tools of the trade,' were required to engage in side work, were mandated to contribute to tip pools that they say were invalid, had to perform pre-shift work while off the clock, were subject to the same pay and time keeping policies, and for D.C. Servers, were subject to the same sick leave practices." *Id.*; *see also Farmers Rest. Grp.*, 291 F. Supp. 3d at 109–19 (discussing evidence of the alleged unlawful wage and hour policies and practices). That is more than sufficient to meet the commonality requirement.

### c.     Typicality

"The requirement for 'typicality' is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.'" *Trombley*, 826 F. Supp. 2d at 192 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001)). Vanessa Calvillo—the proposed representative of the Rule 23 Maryland class— has alleged that Defendants failed to pay her minimum wage and overtime wages when she worked at Defendants' Maryland location, in addition to other alleged violations of Maryland

wage and labor laws.  *See* Am. Compl. ¶¶ 79–101; ECF No. 37-2 ("Calvillo Decl.").  And both

Calvillo and Shayn Stephens—the proposed representatives of the Rule 23 District of Columbia

class—have alleged that Defendants engaged in similar practices with regard to their work as

servers at Defendants' District of Columbia locations.  *See* Am. Compl. ¶¶ 60–78; Calvillo

Decl.; ECF No. 37-1 ("Stephens Decl.").  Accordingly, the proposed representatives' state law

claims are based on the same policies and practices that form the bases of the putative class

members claims against Defendants, such that their claims are "typical" of those of the absent

class members.

### d.    Adequacy of Representation

The D.C. Circuit has recognized two criteria for determining whether absent class

members are adequately represented in a class action or settlement—(1) "the named

representative must not have antagonistic or conflicting interests with the unnamed members of

the class," and (2) "the representative must appear able to vigorously prosecute the interests of

the class through qualified counsel."  *Twelve John Does v. District of Columbia*, 117 F.3d 571,

575 (D.C. Cir. 1997) (quoting *Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*,

551 F.2d 340, 345 (D.C. Cir. 1976)).

With those criteria in mind, the Court in its order requesting supplemental briefing voiced

its concern that the named representatives for the Maryland and District of Columbia classes,

Calvillo and Stephens, may not have been adequate representatives of the absent class members

during settlement negotiations due to the fact that they both had opted in to the collective action.

*See* ECF No. 58 at 1–2.  Specifically, although Calvillo and Stephens are members of the

proposed Rule 23 classes and "'possess the same interest and suffer the same injury' as the class

members," *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (quoting *E. Tex.*

*Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)), because they are also members

of the collective action, Calvillo and Stephens will not actually recover any amount from the sum

set aside for Rule 23 class members under the settlement agreement, *see* Agreement ¶ 1.2.

When parties seek a global compromise settling multiple types of claims, the reviewing

court must look—"either in the terms of the settlement or in the structure of the negotiations"—

for "structural assurance[s] of fair and adequate representation for the diverse groups and

individuals affected." *Amchem*, 521 U.S. at 627. Indeed, when tensions exist among subgroups

of a settlement class, "members of each subgroup cannot be bound to [the] settlement except by

consents given by those who understand that their role is to represent solely the members of their

respective subgroups." *Id.* (quoting *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 743

(2d Cir. 1992), *modified on reh'g sub nom.*, *In re Findley*, 993 F.2d 7 (1993)). In particular, such

conflicts can arise when plaintiffs holding multiple claims with differing values seek to represent

all individuals, including those that only hold one or some of those claims, in negotiations to

reach a comprehensive settlement agreement. *See, e.g.*, *In re Literary Works in Electronic

Databases Copyright Litig.*, 652 F.3d 242, 252–54 (2d Cir. 2011) (reasoning that class

representatives who held claims A, B, and C did not adequately represent class members who

just held claim C because the representatives only had an interest in maximizing their total

payout on all three claims, even if it would be at the expense of the compensation awarded for

claim C).

The Court recognizes that this case presents a somewhat different circumstance: the

potential conflict exists not between two subgroups of the Rule 23 class, but rather between the

opt-in plaintiffs in the collective action and the Rule 23 class action members who did not opt in

to the collective action. But the appearance of conflict raised by the structure of the settlement

agreement—that Stephens and Calvillo may not have adequately represented those who stood to

recover only on their Rule 23 state-law claims, or indeed that they may have sought to maximize their recovery under the separate collective-action settlement amount at the expense of those claims—remains.

Nonetheless, based on the parties' representations in their supplemental memorandum, the Court finds sufficient "assurance[s] of fair and adequate representation" of the absent Rule 23 class members for purposes of provisional class certification. As an initial point, the parties negotiated the damages for Rule 23 class members based on the same theories applied to the collective action claims. *See* Supp. Memo. at 10. Plaintiffs developed projected recovery amounts for the collective action members that encompassed both their federal and state law claims, and they then reasoned that the settlement amount for the Rule 23 class members should be based on the "average per-shift amount of damages" they had determined were owed to each of the 119 collective action plaintiffs. ECF No. 59-1 ("2d Elkin Decl.") ¶¶ 14, 18. In that regard, the interests of Calvillo and Stephens and the absent class members were aligned.

The key aspect of the negotiations in which Calvillo and Stephens did not have a direct incentive to advocate for the interests of the absent Rule 23 class members was in the determination of the proper litigation-risk discount. While Calvillo and Stephens, as members of the collective action, were well situated to represent the 119 collective action members in weighing the collective action's chances of success at trial, they had no such personal stake in the same calculation for the Rule 23 class action. *See* 2d Elkin Decl. ¶¶ 16–17 (discussing negotiation of litigation-risk discount for collective action), 19 (discussing same for Rule 23 class action).

Despite this disparity, the Court finds no basis to suspect that any conflict corrupted the negotiations—for instance, the representatives accepting a greater discount for the Rule 23 class

members in exchange for a larger settlement sum for the 119 collective action members.  Indeed, both Calvillo and Stephens declare that at all times during the negotiations they "understood that [they] represented the interests of both the opt-in plaintiffs as well as the Rule 23 class members in the District of Columbia."  ECF No. 59-2 ("2d Stephens Decl.") ¶ 3; ECF No. 59-3 ("2d Calvillo Decl.") ¶ 3.  And they further indicate that they negotiated the settlement amounts for the collective action and the Rule 23 classes separately.  *See* 2d Stephens Decl. ¶ 4; 2d Calvillo Decl. ¶ 4; *see also* 2d Elkin Decl. ¶ 4.  Even absent any direct conflict, the Court also sees no reason to conclude that Calvillo and Stephens did not "vigorously prosecute the interests of the class through qualified counsel" with regard to discounting the Rule 23 settlement amount.  *Twelve John Does*, 117 F.3d at 575 (quoting *Nat'l Ass'n of Reg'l Med. Programs, Inc.*, 551 F.2d at 345).  It appears that Plaintiffs' counsel, including proposed class counsel Molly Elkin, have been more than capable representatives of both the collective action members and the absent Rule 23 class members.  *See* Elkin Decl. ¶¶ 1–22.  Ms. Elkin has extensive experience in representing employees in wage and hour disputes, *see id.* ¶¶ 2–4, and she specifically consulted with the proposed class representatives regarding the risks of proceeding to litigation and the appropriate valuation of the Rule 23 class members' claims, *see id.* ¶ 22.  Such guidance, in the Court's view, is precisely the benefit that experienced and attentive class counsel bring to these settlement negotiations—a benefit that will further offset any concern that Calvillo and Stephens did not wholeheartedly represent the interests of the absent Rule 23 class members.

Given these representations, coupled with the apparent reasonableness of the settlement terms, as discussed below, *see In re Literary Works*, 654 F.3d at 252 ("*Amchem* therefore allows courts, in assessing the adequacy of representation, to examine a settlement's substance for evidence of prejudice to the interests of a subset of plaintiffs."), the Court concludes, for

purposes of provisional class certification, that the absent Rule 23 class members were adequately represented by Stephens and Calvillo and by class counsel under Rule 23(a)(4).

## 2. Rule 23(b)

### a. Predominance

"The predominance inquiry implicates the commonality requirement of Rule 23(a)(2)" in that "the common issues identified as sufficient under Rule 23(a) must be shown by the plaintiffs to predominate over the non-common issues." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002). "[I]n general, predominance is met 'when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position.'" *Id.* (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)). As previously noted, the state-law claims of the putative District of Columbia and Maryland class members are all based on the same alleged practices and policies of Defendants, and thus hinge on the same "generalized evidence" of such practices. Those common issues clearly predominate over any non-common issues among the class members that may exist, and thus the Court finds that the proposed classes easily satisfy this requirement.

### b. Superiority

"The superiority requirement ensures that resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences.'" *Cohen*, 522 F. Supp. 2d at 117 (quoting *Amchem*, 521 U.S. at 615). The Court agrees with the parties that a class action is the superior method for resolving the class members' individual claims. Given the identity of issues of law and fact among the class members, it is both prudent and efficient to litigate those claims in a single action. And the damages sought by

each individual class member is relatively small compared to the costs of litigating an individual claim. Such benefits far outweigh any interest individual claimants may have in individually controlling the litigation of their claims.

Having found that the proposed District of Columbia and Maryland classes satisfy the requirements of Rule 23(a) and (b)(3), and with the consent of the parties, the Court will provisionally certify the classes for settlement purposes.

### B.     Preliminary Approval of the Settlement

The Court now turns to the terms of the proposed settlement agreement, which resolves both the Rule 23 class action and the collective action. To reiterate, courts "will generally grant preliminary approval of a class action settlement if it appears to fall 'within the range of possible approval' and 'does not disclose the grounds to doubt its fairness or other obvious deficiencies,'" *Richardson*, 951 F. Supp. 2d at 106 (quoting *Trombley*, 759 F. Supp. 2d at 23), with the caveat that courts should apply "closer judicial scrutiny" to proposed settlement agreements simultaneously seeking class certification than would ordinarily be due for settlements reached after class certification, *Trombley*, 759 F. Supp. 2d at 23.

Rule 23(e)(2) provides that a court may only approve a class action settlement upon finding that it is "fair, reasonable, and adequate." While the D.C. Circuit has not announced a specific test for considering whether Rule 23 settlement agreements meet that standard, courts in this Circuit "generally consider five factors: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strengths of [the] plaintiffs' case; (3) the status of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 163 (D.D.C. 2014).

Though the FLSA does not by its terms impose an equivalent standard, courts reviewing FLSA settlements have likewise "scrutinize[d]" them "for fairness." *Carillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 132 (D.D.C. 2014) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).[2]  As a threshold matter, the Court must ensure that the settlement resolves a "bona fide dispute"—that is, that the settlement reasonably resolves issues that are actually disputed by the parties. *Id.* at 131–32; *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 703 (1945) ("A preliminary question arises as to whether respondent's release was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the [FLSA] or whether it constituted a mere waiver of his right to liquidated damages."). The Court has no trouble making such a determination here, given the considerable litigating the parties have engaged in prior to mediation and settlement negotiations.

To then determine whether the settlement is also fair, some courts have simply adopted the familiar framework for reviewing class action settlements under Rule 23(e). *See, e.g.*, *Prince v. Aramark Corp.*, 257 F. Supp. 3d 20 (D.D.C. 2017); *Camp v. City of Pelham*, No. 2:10-cv-01270, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014).  Other courts, however, have opted for what they deem a more "flexibl[e]" approach based on the "totality of the circumstances,"

---

[2] Indeed, the FLSA does not expressly mandate that parties even obtain judicial approval of agreements that settle FLSA claims. *See Sarceno v. Choi*, 78 F. Supp. 3d 446, 449–50 (D.D.C. 2015); *Carrillo*, 51 F. Supp. 3d at 129–31.  And courts that have confronted that question have come to differing conclusions. *Compare Lynn's Food Stores*, 679 F.2d at 1352–53 (concluding that FLSA claims can only be settled or compromised with Department of Labor supervision or by presenting a proposed settlement for scrutiny by a district court) *with Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 253–57 (5th Cir. 2012) (enforcing a private settlement of FLSA claims upon finding that the agreement settled a "bona fide dispute").  The D.C. Circuit has yet to address the issue. *See Carillo*, 51 F. Supp. 3d at 129.  Nevertheless, because the parties mutually have sought judicial approval of their agreement with respect to the settled FLSA claims, and further because the Court must review the agreement to the extent that it settles the Rule 23 class action claims, the Court will proceed to preliminarily review the agreement in its entirety in anticipation of a fairness hearing and final determination of fairness.

focusing in particular on "(1) [whether the proposed settlement] was the product of overreaching by the employer; (2) whether the settlement was the product of negotiation between represented parties following . . . arm's length bargaining; and (3) whether there exist serious impediments to the collection of a judgment by the plaintiffs." *Carillo*, 51 F. Supp. 3d at 132–33 (internal quotation marks omitted) (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365–66 (S.D.N.Y. 2013)); *see also Eely v. Stadium Grp., LLC*, 236 F. Supp. 3d 59, 63 (D.D.C. 2017). In any event, because the Court must evaluate the agreement under the applicable Rule 23(e) framework to the extent that it settles the Rule 23 class members' claims, and further because the Court finds that that framework requires a somewhat more searching review than the totality-of-the-circumstances framework, the Court will focus its analysis on the former approach.

### 1. Arm's-Length Negotiation

As previously noted, it appears that the settlement negotiations were conducted fairly and without any undue pressure. The parties were represented by capable counsel, and they negotiated a settlement agreement over the course of a two-month mediation following significant discovery. *See* Elkin Decl. ¶¶ 14–20. As the parties describe, "[w]ith the help of the experienced Court-appointed mediator, [they] were able to reach a deal after nine hours of in-person mediation—a deal that they can recommend to absent class members and to the Court." ECF No. 56-1 ("Memo.") at 19. And the Court has been presented with no evidence otherwise to suggest that the settlement was the product of anything but a fair, arm's-length negotiation between experienced counsel.

### 2. Terms of the Agreement in Relation to the Strength of the Case

Plaintiffs continue to insist that their legal position is strong and that they would ultimately succeed on their claims at trial, but they admit that "continuing to litigate this matter would be extremely costly and presents litigation risk." Memo. at 19. Specifically, Plaintiffs

acknowledge that, in regard to their tip-pool claim, the parties continue to dispute who was properly included in the tip pool based on their job duties. *See* 2d Elkin Decl. ¶¶ 8–10. And the parties likewise still dispute whether the clothing servers were required to wear constituted a "uniform," and further the proper damages if Plaintiffs were to succeed on those claims. *See id.* ¶¶ 8, 11. The parties also continue to disagree as to the whether Plaintiffs could show that they engaged in sufficient non-tipped "side work" per week to bring their side-work claims, and Defendants contend that Plaintiffs would not be able to establish their sick-leave claims on a class-wide basis. *See id.* ¶¶ 12–13. Indeed, Defendants vigorously opposed Plaintiffs' previous attempts to certify Rule 23 classes, *see* ECF No. 42, and they maintain their position that, had the litigation proceeded, they would have successfully opposed certification, 2d Elkin Decl. ¶ 20.

Given these existing disagreements and the inherent risks and expenses of litigation, the parties compromised on separate settlement amounts for the collective action and the Rule 23 classes. With regard to the collective action claims, as Plaintiffs' counsel describes, the sum represents Plaintiffs prevailing on their minimum wage claims and recovering the difference between the minimum wage and the "tipped" wage, discounted by 7% for litigation risks. *See id.* ¶ 17. In the Court's view, this compromise on behalf of the collective action members appears sufficiently reasonable and fair to warrant preliminary approval.

With regard to the Rule 23 claims, Plaintiffs calculated the total amount of backpay that would be owed Rule 23 class members based on the average per-shift damages owed to the collective action members, and they then estimated that 20% of that amount would represent Plaintiffs prevailing on the side-work and sick-leave claims under state law and also recovering the costs of uniforms and tools of the trade. *See id.* ¶¶ 18–19. Defendants disputed those estimates and Plaintiffs' chances of success, and thus the parties agreed to compromise at

$524,285, or approximately 7% of the total backpay to which Plaintiffs' estimated the Rule 23 class members were entitled to if they prevailed on all claims. *See id.* ¶¶ 20–21.

In its order requesting supplemental briefing, the Court acknowledged concerns regarding the disparity between the settlement amount allocated to the collective action members and the amount allocated to the Rule 23 class members. *See* ECF No. 58 at 2–3. But given the uncertainty Plaintiffs would face in bringing a Rule 23 class action on their state law claims, particularly when compared to the more favorable prospects of the conditionally certified collective action, the Court finds that the proposed settlement terms, at the very least, fall within the bounds of what may constitute a reasonable and fair compromise of Plaintiffs' claim in relation to the strength of their case.

### 3. Stage of the Litigation Proceedings

The parties indicate that they "engaged in significant motions practice and meaningful discovery prior to facing each other at the bargaining table." Memo. at 22. Indeed, before mediation, Defendants produced, among other things, all pay and time work records for the collective action members and policies regarding uniforms, tip pooling, and tools of the trade. Elkin Decl. ¶ 28. And Plaintiffs provided text messages relating to sick-leave requests, receipts for uniforms purchases, and emails regarding uniform policies. *Id.* Particularly at the preliminary-approval stage, "it is enough that the parties represent that formal and informal discovery facilitated a significant investigation of the relevant facts contributing to arms-length settlement negotiation." *Trombley*, 759 F. Supp. 2d at 26. The Court finds that the parties have made such a showing here.

### 4. Reaction of the Class

As the parties point out, because notice has not been sent to members of the Rule 23 classes, the Court cannot yet assess those members' reaction. *See* Memo. at 22. However,

Plaintiffs indicate that the class representatives, all of whom participated in the mediation and have been involved in the litigation since the complaint was filed "fully support the Settlement Agreement." *Id.* (citing Elkin Decl. ¶ 22). While the Court will scrutinize this factor more closely at the final approval stage, the unanimous reaction of the class representatives is encouraging.

### 5. Opinion of Experienced Counsel

The opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Cohen*, 522 F. Supp. 2d at 121 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290, 2003 WL 22037741, at *6 (D.D.C. June 16, 2003)). According to Plaintiffs' counsel, who, as previously discussed, possesses considerable experience in litigating wage and hour class actions, she has "weighed the respective risks to proceeding with litigation and has extensively analyzed the defendants' potential liability based on thorough damages calculations prepared by Woodley & McGillivary Litigation Director Keith Nickerson using the defendants' payroll and time worked data." Elkin Decl. ¶ 21. And her opinion that the settlement "is fair, reasonable, and adequate" and "is in the best interest of the class" weighs in favor of preliminary approval. Memo. at 23.

At bottom, upon consideration of the ordinary "fairness" factors, the Court concludes that the proposed settlement falls "within the range of possible approval." *Trombley*, 759 F. Supp. 2d at 23.

### 6. Scope of the Release

As a final matter, the parties' proposed settlement agreement includes releases for the 119 collective action members and the 862 Rule 23 class members, both of which release Defendants of any wage and hour claims against them, including claims under the FLSA, arising from the time period at issue in this action. *See* Agreement ¶¶ 15.1–.2. In the Order requesting

supplemental briefing, the Court questioned whether, consistent with the FLSA, absent Rule 23 class members who do not affirmatively opt out of the class can be held to release their FLSA claims, given that the FLSA ordinarily requires that an individual affirmatively consent to joining a lawsuit as a plaintiff. *See* 29 U.S.C. § 216(b) (providing that "[n]o employee shall be a party plaintiff to [a collective] action unless he gives his consent"). The parties responded, in effect, that because such a release is not affirmatively precluded in this Circuit, and further because the release in this case is reasonable and fair under the circumstances, the release is appropriate. *See* Supp. Memo. at 14.

Notwithstanding the parties' demurrer, the Court finds little support for the proposition that parties are categorically precluded from including such a release in a binding Rule 23 class-action settlement. To begin with, the statute by its terms imposes no such restriction. The relevant provision, 29 U.S.C. § 216(b), merely states that "[n]o employee shall be a party plaintiff" to an action to recover damages from an employer for violations of the FLSA "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." It says nothing as to whether an employee may be bound by a court-approved settlement releasing FLSA claims that otherwise meets the requirements of Rule 23 and settles a bona fide dispute. Furthermore, if a Rule 23 class were to adjudicate members' state law wage and hour claims on the merits, it would likely have preclusive consequences on any comparable claims under the FLSA based on the same underlying facts and held by those members who failed to opt out of the class. *See Klein v. Ryan Beck Holdings, Inc.*, No. 06 Civ. 3460, 2007 WL 2059828, at *7 (S.D.N.Y. 2007). The Court therefore finds it senseless to categorically preclude a settlement agreement with the same effect.

Other courts have reached similar conclusions.  *See, e.g.*, *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 451 (5th Cir. 2016); *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 132 (D. Colo. 2016); *Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014 WL 923524, at *14 (S.D. Tex. Feb. 13, 2014); *Kuncl v. Int'l Bus. Mach. Corp.*, 660 F. Supp. 2d 1246, 1253–54 (N.D. Okla. 2009).

The Court recognizes that some courts have found that these releases are incompatible with the requirements of the FLSA.  *See, e.g.*, *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 608 (E.D. Cal. 2015); *Donatti v. Charter Commc'ns, L.L.C.*, No. 11-4166-CV-C-MJW, 2012 WL 5207585, at *5 (W.D. Mo. Oct. 22, 2012); *Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 WL 4729789, at *12 (N.D. Ill. Oct. 6, 2011); *La Parne v. Monex Deposit Co.*, No. SACV 08-0302 DOC, 2010 WL 4916606, at *3 (C.D. Cal. Nov. 19, 2010).  But these decisions rest on an unduly expansive reading of § 216(b), and they make little effort to reconcile that reading with the fundamental principles of *res judicata* and the existing framework courts have at their disposal to ensure that proposed settlement agreements are fair and reasonable.  *See Richardson*, 839 F.3d at 451 ("To the extent that these cases can be interpreted for the proposition that the FLSA provides an absolute bar to the release of FLSA claims in a judicially supervised class action settlement using an opt out procedure, we disagree. . . . [T]he FLSA does not create a special exception that prohibits the enforcement of settlement agreements that release FSLA claims as part of an opt out class action.").  To be sure, the Supreme Court has made clear that any waiver of an FLSA claim must result from the settlement of a bona fide dispute, *see Brooklyn Sav. Bank*, 324 U.S. at 703; *see also D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores*, 679 F.2d at 1353 & n.8, but such a requirement was based on the underlying purpose of the FLSA, prior to the addition of § 216(b) in 1947, and does

not turn on whether an employee affirmatively consented to the waiver agreement. And, as previously noted, that requirement is clearly met here.

Accordingly, the Court will not conclude, at least at this stage of the approval process, that release of FLSA claims by Rule 23 class members who do not opt out of the settlement is necessarily invalid.

As to whether the proposed release is nevertheless fair and reasonable, the Court does not find that the scope of the release thrusts this proposed agreement outside the "range of possible approval." *Trombley*, 759 F. Supp. 2d at 23. Eligible servers were given clear notice of their right to affirmatively join the collective action and the consequences for not doing so, and the notice of settlement again informs those individuals of what they must do in order to preserve their FLSA claims. Furthermore, a prevailing employee may not recover separately under the FLSA and the comparable state law for nonpayment of wages, nor may he "stack recovery of liquidated damages" under such statutes. *Perez v. C.R. Calderon Constr., Inc.*, 221 F. Supp. 3d 115, 139 (D.D.C. 2016). As such, it is both practical and reasonable to require members of the Rule 23 class to release both their state and federal claims in order to participate in the settlement provided that the settlement fairly resolves the members' wage and hour claims. And for reasons already discussed, the Court does not find that the proposed settlement figures for the Rule 23 class members are so unfair as to preclude preliminary approval.

Thus, the Court will preliminarily approve the proposed settlement agreement, including the proposed releases, though it will revisit both the propriety and the fairness of such releases prior to final approval of the settlement.

### C.    Notice and Further Proceedings

Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notices

"must be reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Brown v. Wells Fargo Bank, N.A.*, 869 F. Supp. 2d 51, 64 (D.D.C. 2012) (alteration in original) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Court has determined that, following the parties' revision in response to the Court's November 6, 2018 Order, the proposed notices for the collective action members and the Rule 23 class members are sufficient. The notices explain the terms of the settlement; what the recipient can expect to receive from the settlement; the steps he or she must take to participate in the settlement or, for each Rule 23 class member, what steps he or she must take to opt out of the settlement; and how he or she can raise an objection to the settlement and participate in the final fairness hearing. *See* FLSA Notice; Am. R. 23 Notice. The parties have proposed mailing the notices to the best-known addresses of the collective action members and the putative Rule 23 class members, after running the list through the United States Post Office's change-of-address database, within five business days of this Order. *See* Agreement ¶¶ 5.1–.2. And recipients have 45 days from the date of mailing to object to the settlement and, for putative Rule 23 class members, either to opt out of the settlement or to file a claim form. *See id.* ¶¶ 5.3, 6.2; FLSA Notice at 5; Am. R. 23 Notice at 6.

The Court finds that these proposed notices and the procedures contemplated therein meet the standard required by Rule 23(e)(1), and it will thus order that those notices be sent to the collective action members and putative Rule 23 class members no later than February 22, 2019. The Court will also hold a fairness hearing, as required by Rule 23(e)(2), on May 30, 2019, at 10:00 a.m.

**IV.    Conclusion and Order**

For all of the above reasons, Plaintiffs' motion, ECF No. 56,  is **GRANTED**.

Specifically, it is hereby **ORDERED** that:

1. A class that includes all current and former servers of Defendants who worked at any of Defendants' restaurants in Maryland during all of some part of the time period from June 7, 2014, through July 20, 2018, and covering claims brought under the MWHL and the MWPCL ("Rule 23 Maryland Class") is provisionally certified for settlement purposes only;

2. A class that includes all current and former servers of Defendants who worked at any of Defendants' restaurants in the District of Columbia during all of some part of the time period from June 7, 2014, through July 20, 2018, and covering claims brought under the DCMWA and the DCSLA ("Rule 23 D.C. Class") is provisionally certified for settlement purposes only;

3. The proposed settlement agreement, ECF No. 56-2, is preliminarily approved;

4. The proposed notices of settlement for the collective action members, ECF No. 56-3, and for the Rule 23 class members, ECF No. 59-5, are approved;

5. Rust Consulting is appointed as Settlement Administrator;

6. Vanessa Calvillo is approved as Class Representative for the Rule 23 Maryland Class;

7. Vanessa Calvillo and Shayn Stephens are approved as Class Representatives for the Rule 23 D.C. Class; and

8. Molly A. Elkin is approved as Class Counsel.

It is further **ORDERED** that the Settlement Administrator shall mail the approved notices to the collective action members and the putative Rule 23 class members no later than February 22, 2019.  A fairness hearing to determine whether to finally approve the proposed

settlement agreement will be held on Thursday, **May 30, 2019**, at **10:00 a.m.** in Courtroom 11.

    **SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 15, 2019