**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHAYN STEPHENS *et al.*,

      *Plaintiffs*,

  v.

FARMERS RESTAURANT GROUP *et al.*,

      *Defendants*.

Civil Action No. 17-1087 (TJK)

## MEMORANDUM OPINION

Plaintiffs, who worked at several restaurants operated by Defendants in Virginia, Maryland, and the District of Columbia, bring claims under the Fair Labor Standards Act (FLSA) and District of Columbia and Maryland law, alleging that Defendants violated federal and state minimum-wage, overtime-pay, and sick-leave requirements. The parties have reached a settlement agreement resolving all claims, which the Court preliminarily approved, and they now seek final approval of that agreement. Before the Court are the parties' Joint Motion for Final Approval of the Settlement Agreement, ECF No. 62, as well as Plaintiffs' Unopposed Motion for Attorney's Fees and Expenses, ECF No. 64. For the reasons explained below, the motions will be granted.

## I.    Background

The Court described in detail the factual and procedural background of this case in its two prior opinions. *See Stephens v. Farmers Rest. Grp.*, 291 F. Supp. 3d 95 (D.D.C. 2018) ("*Stephens I*"); *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476 (D.D.C. 2019) ("*Stephens II*"). Thus, the Court recites only the salient aspects of that background here in addition to recounting the developments since the Court preliminarily approved the settlement agreement.

## A. Factual and Procedural History

Farmers Restaurant Group and co-owners Daniel Simon and Michael Vucurevich (collectively, "Defendants") operate five restaurants in Virginia, Maryland, and the District of Columbia. ECF No. 5 ("Am. Compl.") ¶¶ 8–9. On June 7, 2017, six then-current and former employees of Defendants commenced this action, alleging Defendants violated various federal and state labor laws. Plaintiffs' complaint, as amended, brings claims under the FLSA, the District of Columbia Minimum Wage Act (DCMWA), D.C. Code § 32-1001 *et seq.*, the District of Columbia Sick Leave Act (DCSLA), *id.* § 32-131, the Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law (MWPCL), *id.* § 3-501 *et seq.* *See* Am. Compl. ¶¶ 45–101.

In July 2017, Plaintiffs sought conditional certification of a collective action for their FLSA, DCMWA, and DCSLA claims. *See* ECF No. 13. The Court granted Plaintiffs' motion over Defendants' opposition, conditionally certifying a collective of current and former servers based on some—though not all—of the alleged policies Plaintiffs claimed violated the applicable federal and state wage and hour laws. *See Stephens I*, 291 F. Supp. 3d at 107–21. After Plaintiffs' counsel sent putative members a notice of lawsuit, 119 individuals opted to join the collective action. *See Stephens II*, 329 F.R.D. at 481.

In March 2018, Plaintiffs moved to certify two classes covering their District of Columbia and Maryland state-law claims under Federal Rule of Civil Procedure 23, *see* ECF No. 36, which Defendants opposed, *see* ECF No. 42. In May of that year, however, and after Plaintiffs' motion was fully briefed, the parties agreed to pursue mediation. Several months later, the parties submitted a proposed settlement agreement to the Court for preliminary approval. *See Stephens II*, 329 F.R.D. at 481. The Court requested supplemental briefing from the parties on certain aspects of the agreement and the negotiations. *See id.* Upon consideration

of the parties' filings, the Court granted their motion, provisionally certifying the proposed Rule

23 classes for settlement purposes and preliminarily approving the proposed settlement

agreement. *See id.* at 491. In that order, the Court also approved the proposed notices to be sent

to members of the collective action and to putative Rule 23 class members, appointed a

settlement administrator, approved the proposed class representatives for the Rule 23 Maryland

and District of Columbia classes, and approved Molly Elkin as class counsel. *See id.*

Following the Court's preliminary approval, the settlement administrator mailed notices

to the 119 members of the collective action and to 861 members of the Rule 23 classes. *See* ECF

No. 63-1 ("Schwartz Decl.") ¶ 9. 154 notices were initially returned as undeliverable, but the

settlement administrator was ultimately able to locate correct addresses for all but 38 of those

individuals. *Id.* ¶ 10. By the deadline to postmark claims, 226 Rule 23 class members submitted

a claim form. *Id.* ¶ 14.[1] Though advised in the notice of the right to opt out of the settlement and

the consequences of taking no action, no member of the Rule 23 classes opted out. *See* ECF No.

59-5; Schwartz Decl. ¶ 17. And though apprised in the notice of the opportunity to object, no

member of the collective action or the Rule 23 classes objected to the settlement agreement. *See*

ECF No. 56-3; ECF No. 59-5; Schwartz Decl. ¶¶ 17–18.

On May 17, 2019, the parties submitted a joint motion for final approval of the settlement

agreement. ECF No. 62. Plaintiffs also submitted an unopposed motion for attorney's fees and

expenses under the applicable fee-shifting provisions for the federal and state law claims, as

agreed to in the settlement agreement. ECF No. 64; *see also* ECF No. 65-1 ("Elkin Decl."). On

May 30, 2019, the Court held a fairness hearing to assess the settlement. As there were no

---

[1] The settlement administrator received 232 claim forms, but two were duplicates and four were
submitted beyond the postmark deadline. *See* Schwartz Decl. ¶ 14.

objectors, only counsel for the parties were present, and they discussed in more detail the negotiations, the agreement terms, and their opinions about the settlement.

## B.    The Settlement Terms

The terms of the settlement agreement have not changed since the Court preliminarily approved it.  ECF No. 63 ("Final Approval Mot.") at 3; *see also* ECF No. 56-2 ("Agreement"); *Stephens II*, 329 F.R.D. at 481–82.

The agreement settles all federal and state wage and hour claims of the 119 servers who opted in to the collective action as well as all claims of members of the Rule 23 class action.  The two Rule 23 settlement classes, under Maryland and District of Columbia law, respectively, consist of 861 current and former servers who worked in one of Defendants' restaurants in either Maryland or the District of Columbia between June 7, 2014, and July 20, 2018.  Agreement ¶ 1.2.[2]

Upon final approval of the settlement, Defendants will deposit $1,490,000 in a settlement fund to be distributed as described below.  *Id.* ¶ 9.3.  Class counsel will receive an award of $388,484 in attorney's fees and $8,516 for litigation expenses, and the settlement administrator will be paid in an amount not to exceed $35,000 for its services.  *Id.* ¶¶ 10.3–.4.  Each of the seven named plaintiffs, as representatives of the collective action and Rule 23 classes, will receive a service award of $5,000.  *Id.* ¶ 10.5.  The 119 individuals who opted in to the collective action will receive $498,715, to be distributed to each individual based on the total number of weeks that he or she worked as a server during the applicable period.  *Id.* ¶¶ 10.6–.7.  Of the remaining $524,285 set aside for members of the Rule 23 class, $179,538.52 has been claimed

---

[2] The agreement identifies 862 putative class members, but counsel at the fairness hearing clarified that one individual had been listed twice.

by the 226 individuals who submitted proper claim forms.  Schwartz Decl. ¶ 16.  The unclaimed

balance of $344,746.48 will revert to Defendants.

## II.     Legal Standard

### A.     Rule 23 Class Certification

Parties seeking class certification, even for settlement purposes only, must show that they

meet the prerequisites of Rule 23(a) and fall within at least one of the categories described in

Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); *see also*

*Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 191–92 (D.D.C. 2011) ("*Trombley II*").  Rule

23(a) requires: (1) that the proposed class be "so numerous that joinder of all members is

impracticable"; (2) that there be "questions of law or fact common to the class"; (3) that "the

claims or defenses of the representative parties are typical of the claims or defenses of the class";

and (4) that the representatives "will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).  And under Rule 23(b)(3), by which the parties seek certification, the

parties must "demonstrate (1) predominance of common questions of law and fact to the entire

class, and (2) superiority of the class action method to other methods of adjudication for the

controversy." *Trombley II*, 826 F. Supp. 2d at 193.

### B.     Final Approval of the Settlement Agreement

Parties to a class action cannot enter into a binding settlement agreement without court

approval.  Fed. R. Civ. P. 23(e); *see also Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir.

1998).  A reviewing court may approve a proposed agreement "only after a hearing and only on

finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making that

determination, a court must consider whether: (1) "the class representatives and class counsel

have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3)

"the relief provided for the class is adequate, taking into account," as relevant here, the costs,

risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, and the proposed attorney's fee awards; and (4) "the proposal treats class members equitably relative to each other." *Id.* When the parties are "seeking class certification and settlement at the same time, however," the court must apply "'closer judicial scrutiny' than settlements that are reached after class certification." *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 23 (D.D.C. 2011) ("*Trombley I*") (quoting Manual for Complex Litigation (Fourth) § 21.612 (2004)).

Whether to approve a proposed settlement agreement is ultimately within the discretion of the reviewing court. *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375 (D.D.C. 2002). But that discretion "is constrained by the 'principle of preference' favoring and encouraging settlement in appropriate cases." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004) (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999)). Indeed, in this Circuit, "[s]ettlement is highly favored, as '[n]ot only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation.'" *United States v. MTU Am. Inc.*, 105 F. Supp. 3d 60, 63 (D.D.C. 2015) (second alteration in original) (quoting *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983)).

III.    **Analysis**

The Court will first address certification of the Rule 23 classes for settlement purposes, before proceeding to evaluate the fairness of the settlement agreement.

A.      **Class Certification for Settlement Purposes**

In its opinion and order provisionally certifying the proposed classes for settlement purposes, the Court addressed each of the four Rule 23(a) requirements as well as the necessary conditions under Rule 23(b). *See Stephens II*, 329 F.R.D. at 483–86. Most of those requirements

were and remain evidently satisfied, and thus the Court will not rehash them here. Specifically, for the reasons stated in its prior opinion, the Court finds that the requirements of numerosity, commonality, and typicality under Rule 23(a) and the requirements of predominance and superiority under Rule 23(b) are satisfied. *See id.*

Even so, with respective to the requirement of adequate representation, in provisionally certifying the classes for settlement purposes, the Court identified a potential conflict between the interests of the proposed class representatives and the absent Rule 23 class members. *See id.* at 483–85. In particular, the Court expressed concern with the fact that Vanessa Calvillo and Shayn Stephens, the class representatives for the Maryland and District of Columbia classes, were also members of the collective action. According to the structure of the settlement agreement, members of the collective action, including Calvillo and Stephens, are to recover only from the funds set aside for the collective action claims and will not recover from the sum set aside for the Rule 23 class members. *See id.* at 484; Agreement ¶ 1.2. And that bifurcated structure presented a possible conflict, because Calvillo and Stephens had no direct monetary interest in the negotiated settlement amount for the Rule 23 classes and therefore may not have adequately represented those who stood to recover only from those funds. *See Stephens II*, 329 F.R.D. at 484. The Court requested supplemental briefing from the parties addressing that issue, *see* ECF No. 58 at 1–2, and it ultimately concluded, for purposes of provisional certification, that Calvillo and Stephens were nevertheless adequate representatives of the classes, *see Stephens II*, 329 F.R.D. at 485.

The Court finds no reason to depart from the conclusion here. Courts in this Circuit examine two criteria to determine whether absent class members are adequately represented in a class action or settlement—(1) "the named representative must not have antagonistic or

conflicting interests with the unnamed members of the class," and (2) "the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (quoting *Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976)). When parties seek a global compromise settling multiple types of claims, however, the reviewing court must look for "structural assurance[s] of fair and adequate representation for the diverse groups and individuals affected." *Amchem*, 521 U.S. at 627. Indeed, when tensions exist among subgroups of a settlement class, "members of each subgroup cannot be bound to [the] settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *Id.* (quoting *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 743 (2d Cir. 1992), *modified on reh'g sub nom.*, *In re Findley*, 993 F.2d 7 (1993)).

Given the parties' representations, both in their briefing and at the fairness hearing, the Court finds sufficient "assurance[s] of fair and adequate representation" of the absent Rule 23 class members by Calvillo and Stephens. As the Court noted in its prior opinion—and as counsel confirmed again at the fairness hearing—the parties negotiated the damages for Rule 23 class members based on the same theories applied to the collective action claims. *See Stephens II*, 329 F.R.D. at 484–85; *see also* Final Approval Mot. at 9. And in that regard, the interests of Calvillo and Stephens and the absent class members were aligned.

The source of the Court's concern was Calvillo's and Stephens's representation of the absent class members in negotiating the litigation-risk discount for the Rule 23 claims. *Stephens II*, 329 F.R.D. at 485. While Calvillo and Stephens, as members of the collective action, were well situated to represent the 119 collective action members in weighing the collective action's chances of success at trial, they had no such personal stake in the same calculation for the Rule

23 class action. *See* ECF No. 59-1 ("Supp. Elkin Decl.") ¶¶ 16–17 (discussing negotiation of litigation-risk discount for collective action), 19 (discussing same for Rule 23 class action). Indeed, the difference between the two discounts is stark—an approximate 7% discount from Plaintiffs' high-end recovery estimate on all claims for the collective action compared to an approximate 93% discount for the Rule 23 claims. *See* Final Approval Mot. at 9–11; ECF No. 59-1 ¶ 21. Not only did the structure of the settlement create the risk that Calvillo and Stephens were less-than-vigorous representatives when it came to negotiating the litigation-risk discount for the Rule 23 classes, but it also created an incentive for the representatives to accept a higher discount for the Rule 23 claims *in exchange for* a larger settlement sum for the 119 collective action members.

Despite these structural concerns, however, after reviewing the parties' filings and their representations at the fairness hearing, the Court finds no reason to suspect that any conflict of that nature corrupted the negotiating process. As the Court noted previously, Calvillo and Stephens have affirmed that they negotiated the settlement amounts separately. *See Stephens II*, 329 F.R.D. at 485. And they declare that at all times during the negotiations they "understood that [they] represented the interests of both the opt-in plaintiffs as well as the Rule 23 class members in the District of Columbia." *Id.* (quoting ECF No. 59-2 ¶ 3; ECF No. 59-3 ¶ 3).

Nor does the Court see any basis to conclude that Calvillo and Stephens did not "vigorously prosecute the interests of the class through qualified counsel" regarding the discount incorporated into the Rule 23 settlement amount. *Twelve John Does*, 117 F.3d at 575 (quoting *Nat'l Ass'n of Reg'l Med. Programs, Inc.*, 551 F.2d at 345). Ms. Elkin has extensive experience in representing employees in wage and hour disputes, and she specifically consulted with the proposed class representatives about the risks of proceeding to litigation and the appropriate

valuation of the Rule 23 class members' claims. *See Stephens II*, 329 F.R.D. at 485. To the extent that there is any doubt about the "vigorousness" of Calvillo and Stephens's negotiating, Ms. Elkin's expertise and careful guidance offset that concern. While the disparity between the two litigation-risk discounts still gives the Court pause, whether the agreement reached as to the Rule 23 class members is ultimately a "fair" settlement of their claims can be properly addressed—and is addressed—as part of the Court's review of the terms of the agreement under Rule 23(e).

For these reasons, the Court finds that Calvillo and Stephens were adequate representatives of the Rule 23 class members under Rule 23(a)(4). And having therefore found that the proposed District of Columbia and Maryland classes satisfy the requirements of Rule 23(a) and (b)(3), and with the consent of the parties, the Court will certify the classes for settlement purposes.

## B.     Final Approval of the Settlement

The Court now turns to the terms of the proposed settlement agreement, which resolves both the Rule 23 class action and the collective action. To reiterate, a reviewing court may approve a proposed agreement "only after a hearing and only on finding that it is fair, reasonable, and adequate" based on a set of four factors. Fed. R. Civ. P. 23(e). In determining whether a proposal is fair, reasonable, and adequate, Rule 23(e) directs courts to consider the: (1) adequacy of representation by class representatives and class counsel; (2) appearance of arm's-length negotiations; (3) adequacy of the negotiated relief; and (4) relative treatment of class members.

*Id.*; *see also In re Domestic Airline Travel Antitrust Litig.*, Misc. No. 15-1404 (CKK), 2019 WL 2082906, at *4 (D.D.C. May 13, 2019).[3]

Though the FLSA does not by its terms impose an equivalent standard, courts reviewing FLSA settlements have likewise "scrutinize[d]" them "for fairness." *Carillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 132 (D.D.C. 2014) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).[4] To begin with, the Court must ensure that the settlement resolves a "bona fide dispute"—that is, that the settlement reasonably resolves issues that the parties actually contest. *Id.* at 131–32; *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 703 (1945) ("A preliminary question arises as to whether respondent's release was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the [FLSA]

---

[3] The Federal Rules were amended in December 2018 to expressly include these factors. *See* Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments. When evaluating proposed settlements before these changes, courts in this Circuit "generally consider[ed] five factors: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strengths of [the] plaintiffs' case; (3) the status of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 163 (D.D.C. 2014). The Advisory Committee notes accompanying the 2018 Amendments clarify that the four codified factors are not meant "to displace any factor" deep-rooted in Circuit caselaw, but to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments. For these reasons, while the Court will structure its evaluation using the four factors outlined in Rule 23(e)(2), it will nevertheless specifically consider those factors that courts have tended to review in this Circuit.

[4] As the Court recognized in its prior opinion, *see Stephens II*, 329 F.R.D. at 486 n.2, the FLSA does not expressly mandate that parties obtain judicial approval of agreements that settle FLSA claims. But because the parties mutually seek judicial approval of their agreement on the settled FLSA claims, and further because the Court must review the agreement to the extent that it settles the Rule 23 class action claims, the Court will review the agreement in its entirety for a final determination of fairness. *See Sarceno v. Choi*, 78 F. Supp. 3d 446, 449–50 (D.D.C. 2015) (noting that declining to assess a proposed FLSA settlement "leaves the parties in an uncertain position" because the settlement could later be held unenforceable after the parties voluntarily dismiss the suit).

or whether it constituted a mere waiver of his right to liquidated damages."). The Court, as noted previously, *see Stephens II*, 329 F.R.D. at 486–87, easily concludes as much here. To then determine whether the settlement is fair, for the reasons explained in its prior opinion, *see id.*, the Court will rely on the framework for reviewing class action settlements under Rule 23(e) and review the agreement as a whole. *See, e.g.*, *Prince v. Aramark Corp.*, 257 F. Supp. 3d 20 (D.D.C. 2017).

### 1. Adequacy of Representation and Arm's-Length Negotiation

Rule 23(e)(2)(A) and (B) direct the Court to consider the adequacy of class representatives' and class counsel's representation as well as whether the proposed settlement appears to have been negotiated at arm's length. These factors address "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments, Subdivision (e)(2), Paragraphs (A) and (B).

For the same reasons identified in the Court's prior opinion, *see Stephens II*, 329 F.R.D. at 487, it appears that the settlement negotiations were conducted fairly and without any undue pressure. The negotiations took place over two months before a neutral, Court-appointed mediator. *See* ECF No. 55. As the parties describe, they "were able to reach a deal after nine hours of in-person mediation," ECF No. 56-1 at 19, and counsel for both parties reaffirmed at the fairness hearing that the negotiations were principled and conducted at arm's length, with the ultimate goal of swiftly and fairly resolving the litigation for the benefit of all parties. Furthermore, not one individual of the hundreds notified questioned the integrity of the negotiations process or otherwise objected to the settlement. Schwartz Decl. ¶¶ 17–18.

Nor does the Court find any basis to conclude that the class representatives inadequately represented the absent members of the collective action and Rule 23 classes during the

negotiations process. Calvillo and Stephens have made clear that they were at all times during the mediation aware of their role representing the interests of those individuals and the various tradeoffs of reaching a settlement as opposed to proceeding to trial. *See* ECF No. 59-2 ¶¶ 3–10; ECF No. 59-3 ¶¶ 3–10. Likewise, the Court finds no indication that Ms. Elkin provided less than adequate counsel over the course of this litigation. She has extensive experience in litigating wage and hour collective and class actions, including through arbitration and mediation, *see* ECF No. 56-5 ¶¶ 1–12, and both she and the class representatives represent that they relied on her experienced advice over the course of the settlement negotiations, *see id.* ¶¶ 16–22; ECF No. 59-2 ¶ 5; ECF No. 59-3 ¶ 5. Furthermore, while the propriety of the incentive awards to named Plaintiffs and the award of attorney's fees and costs to Plaintiffs' counsel will be addressed below, nothing in the record suggests to the Court that these particular aspects of the negotiation were collusive or otherwise tainted.

### 2. Adequacy of the Relief and Relative Treatment of Class Members

Rule 23(e)(2)(C) and (D) direct the Court to consider whether the relief provided for the collective and the classes is adequate and whether the proposed agreement treats those members equitably relative to one another. These provisions "focus on what might be called the 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments, Subdivision (e)(2), Paragraphs (C) and (D).

In determining whether a proposed settlement provides the class with adequate relief, Rule 23(e)(2)(C) instructs Courts to consider, as relevant here, the "costs, risks, and delay of trial and appeal," "the effectiveness of any proposed method of distributing relief to the class," and "the terms of any proposed award of attorney's fees." Rule 23(e)(2)(C)(i)–(iii). And in evaluating the overall fairness of a proposed settlement, courts in this Circuit also generally consider the terms of the settlement in relation to the strength of the plaintiffs' case, the status of

the litigation at the time of settlement, and the reaction of the class and experienced counsel. *See Alvarez*, 303 F.R.D. at 163. Upon review of these various considerations, the Court finds that the proposed settlement satisfies Rule 23(e)'s requirements of adequacy and fairness.

While both parties maintain that their legal positions are strong, they recognize the inherent risks and costs of continuing to litigate the matter and have therefore agreed to settlement terms that, in their view, adequately account for those uncertainties. *See* Final Approval Mot. at 8–9. During the negotiations process, Plaintiffs asserted that were the collective action members to prevail on either their uniforms, tools-of-the-trade, or tip-pool claims, they would be entitled to $536,593 for the 119 individuals. Supp. Elkin Decl. ¶ 8. And were they only to prevail on their side-work claims, Plaintiffs asserted that they would at least be entitled to 20% of the difference between the applicable minimum wage and tipped wage, or $107,318.60. *Id.* ¶ 12. Defendants insisted that they were not liable to Plaintiffs on any of their collective action claims, and acknowledged that at best, if Plaintiffs were to prevail on their uniform and tools-of-the-trade theories, they would be entitled to $33,787 in out-of-pocket costs. *Id.* ¶ 11. Both parties recognized the inevitable costs if they were to proceed to discovery and trial, though they acknowledged that the Court had already certified the collective action. Considering that posture and the risks and costs of continuing to litigate, the parties agreed to settle these claims for $498,715, reflecting a 7% discount from Plaintiffs' projected recovery. Agreement ¶¶ 10.6–.7; Final Approval Mot. at 10. And in light of those considerations, the Court sees no reason to conclude otherwise.

As for settlement of the Rule 23 class members' claims, Plaintiffs applied the same theory of damages as the collective action claims, projecting that the 861 class members would be entitled to a total recovery of $7,066,241 were they to prevail entirely on their minimum wage

claims or, at the very least, 20% of that sum, $1,413,248, were they to prevail only on their after-hours side-work claim. Supp. Elkin Decl. ¶¶ 18–19. Defendants again argued that Plaintiffs were entitled to no recovery, and they continued to take the position that Plaintiffs could not certify the proposed District of Columbia and Maryland classes under Rule 23. *Id.* ¶¶ 18–20. In light of these disputes, as well as the other risks and costs attendant to continuing to litigate the class action, the parties agreed to settle the class action claims for a potential total of $524,285, depending on how many members submitted claims. Agreement ¶¶ 10.6, 10.8.

As the Court explained in its order requesting supplemental briefing, and reiterated at the fairness hearing, the disparity between the discount applied to the collective action claims compared to the class actions claims gives the Court pause. *See* ECF No. 58 at 2–3. Still, after considering the circumstances of the litigation and the reactions of the classes and class counsel, the Court ultimately agrees that the settlement fairly and equitably resolves the claims of the Rule 23 classes.

The primary explanation for the disparity between the two groups of claimants put forward by the parties was the obstacle of certifying the Rule 23 classes. *See* Final Approval Mot. at 10; ECF No. 59 at 10–12. Although the Court certified the collective action, Plaintiffs faced a considerably higher burden in seeking certification of the proposed classes, *see Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 117 (D.D.C. 2004), and indeed Defendants vigorously opposed Plaintiffs' motion for certification before the parties entered mediation, *see* ECF No. 42; *see also* ECF No. 59 (noting that Defendants continued to assert their opposition to Rule 23 certification during the mediation process). That uncertainty not only brought additional risk, but it necessarily entailed additional costs and delays. Critically, unlike the Court's conditional certification of the collective action or a rejection of any attempt by Defendants to decertify the

collective, of which Defendants likely could not seek interlocutory review, *see, e.g.*, *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 226–27 (3d Cir. 2016), the Court's decision on Plaintiffs' motion to certify the Rule 23 classes would be subject to immediate appeal—and the arduous and costly delays that come with it.

Plaintiffs further note that it is appropriate for the individuals who chose to come forward with their claims and actively participate in the lawsuit to recover more than the absent Rule 23 class members. *See* ECF No. 59 at 12.[5] The individuals who opted in to the lawsuit contributed to Plaintiffs' ability to progress the collective-action claims and subjected themselves to possible discovery by Defendants. Moreover, because any unclaimed funds set aside for the Rule 23 classes will revert to Defendants, Plaintiffs sought to ensure that "as much of the total settlement amount recovered from [D]efendants will actually be *paid out*." *Id.*

To be sure, the fairness of those latter considerations could be called into question because, as noted, the two class representatives were not set to recover from the Rule 23 settlement amount.[6] But it is here that the absence of *any* objector is critical. Despite clear

---

[5] The settlement also provides $5,000 incentive awards to each of the named Plaintiffs to compensate them for their services during the litigation, such as helping counsel investigate the claims, leading discovery efforts, and participating in mediation. *See* Final Approval Mot. at 15. These awards track the size of payments to participating plaintiffs in other class action settlements in this Circuit, *see, e.g.*, *Trombley II*, 826 F. Supp. 2d at 207 ($5,000 award); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 8–9 (D.D.C. 2008) ($10,000 award); *Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 124 (D.D.C. 2007) ($7,500 award), and class members were told about the awards as part of the notice of settlement and did not object. The Court thus finds these incentive awards to be reasonable given the individuals' contribution to the lawsuit.

[6] The Court recognizes the practical impediments to finding class representatives in a hybrid FLSA-Rule 23 action who prefer only to join the class action. To the extent that a putative class member is already willing to actively participate in the litigation, there is every incentive for that individual to opt in to the collective action. Nevertheless, in light of the inherent structural conflict, the Court's approval of this particular settlement agreement should not be taken as a

notice of the settlement terms and a chance to object, not one individual of the over 800 notified filed an objection or sought to opt out, and over one-quarter of those individuals affirmatively sought to partake by filing claims—a high participation rate. *See* 2 McLaughlin on Class Action § 6:24 (15th ed. 2018) ("Claims-made settlements typically have a participation rate in the 10-15 percent range."); *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 21 (D.D.C 2015) (deeming 29% a "very high participation rate"). Moreover, the projected average recovery amount for Rule 23 class members, $794.42, is not such an insignificant sum that class members would lack an incentive to make their objections known. *See In re APA*, 311 F.R.D. at 21 (suggesting that a lack of objectors is less telling when the average recovery is relatively small).

The favorable opinion of class counsel also assures the Court that the settlement treated the Rule 23 class members adequately and equitably. The opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Cohen*, 522 F. Supp. 2d at 121 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290, 2003 WL 22037741, at *6 (D.D.C. June 16, 2003)). Indeed, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* at 120–21 (quoting *In re Vitamins*, 305 F. Supp. 2d at 104). As noted, Ms. Elkin has extensive experience in litigating wage and hour class actions, and she too represented the interests of the absent Rule 23 class members. Her conviction that the settlement, particularly

---

blanket endorsement of this settlement and negotiating arrangement, and the Court encourages class counsel to avoid it as much as possible.

given the representations made by counsel for Defendants about their position on the Rule 23 claims, constitutes a fair and equitable outcome for class members is significant.[7]

At bottom, and stepping back from these particular factors, the Court finds no reason to disturb the agreement reached by the parties. The settlement presents a relatively quick and efficient resolution of the parties' disputes by which the absent Rule 23 class members are guaranteed to receive considerable sums of money *now*. The claims-processing procedure established by the parties led to many individuals claiming verified stakes in the settlement amount without unnecessary difficulty or delay, and each of those individuals had been informed of their ability to recover through opting in to the collective action but neglected to do so. Indeed, the Court's concern stems not from any independent worry that the settlement amount for the Rule 23 claims was wildly inadequate under the circumstances, but from the relative disparity between that amount and the recovery negotiated on behalf of the collective action. And if anything, in the Court's view, that disparity reflects a relatively high return for the collective action members rather than an inadequate recovery for the Rule 23 classes. For the reasons explained, the Court has assured itself that the amount for which Plaintiffs settled the Rule 23 claims is reasonable and fair and not the product of collusive or conflicted negotiations. Cognizant of the "long-standing judicial attitude favoring class action settlements," *In re Vitamins*, 305 F. Supp. 2d at 103, and mindful of the fact that not a single individual objected to this proposed resolution or opted out and that several hundred would like to partake in the

---

[7] The Court addresses the appropriateness of counsel's award of attorney's fees—a factor listed in Rule 23(e)(2)(C) to be considered in evaluating the adequacy of the relief provided for the class—below. But it is important to note for purposes of evaluating the adequacy and fairness of the relief provided to members of the collective and Rule 23 classes that the parties negotiated the attorney's fees and costs entirely separately from the amounts allocated to the claimants, and thus the award to counsel does not diminish claimants' recovery. *See* Supp. Elkin Decl. ¶ 4.

recovery on these terms, the Court ultimately finds that the settlement provides adequate and equitable relief to members of both the collective action and Rule 23 class action.

Finally, the Court briefly addresses the scope of the release for the absent Rule 23 class members, an issue examined in its prior opinion preliminarily approving the settlement. The Court previously raised concerns that the proposed release for Rule 23 class members included any claims they had against Defendants from the relevant period under the FLSA, despite having never opted in to the collective action. *See Stephens II*, 329 F.R.D. at 489. The Court, however, concluded that such a release was lawful, *see id.* at 489–90, and the Court does not depart from that conclusion now. Moreover, for the reasons explained in its prior opinion, including the preclusive effects that settling state-law wage and hour claims would have on class members' ability to recover under the FLSA, the Court does not find that the proposed release renders the settlement unfair. *See id.* at 490.

For the reasons explained, the Court finds that the proposed agreement satisfies the requirements of Rule 23(e)(2) and will therefore grant the parties' joint motion and approve the settlement.

### C.      Attorney's Fees and Costs

Finally, the Court addresses Plaintiffs' unopposed motion for attorney's fees and costs. As noted, the settlement provides Plaintiffs' counsel an award of $397,000, inclusive of $8,516 in expenses. Agreement ¶ 8.3. The Court finds that award to be reasonable and will therefore grant the motion.

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Moreover, under the FLSA's fee-shifting provision, an award of attorney's fees to the prevailing party is mandatory, 29 U.S.C. § 216(b), as is such an award

under the DCMWA and the MWHL, *see* D.C. Code § 32-1308(b); Md. Code Ann. Lab. & Empl. § 3-507(b). By any authority, however, the Court must ultimately ensure that the award is "reasonable." And the Court "enjoys substantial discretion in making reasonable fee determinations." *Swedish Hosp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993).

Here, the reasonableness of the proposed award must be measured against the estimated total costs of counsel's services over the course of the litigation, known as the "lodestar" figure. *See Driscoll v. George Wash. Univ.*, 55 F. Supp. 3d 106, 112 (D.D.C 2014); *see also Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 551–52 (2010) (endorsing the lodestar method for determining attorney's fees under a fee-shifting statute). Indeed, the DCMWA specifically mandates that an award of attorney's fees under that statute be based on the lodestar matrix for attorney fee rates approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000). *See* D.C. Code § 32-1308(b)(1). That matrix, known as the "LSI *Laffey* matrix" by virtue of the case in which it originated and later adjustments to it made using the Bureau of Labor Statistics "Legal Services Index," provides estimated hourly rates for lawyers in the District of Columbia practicing complex federal litigation. *See DL v. District of Columbia*, 924 F.3d 585, 589–90 (D.C. Cir. 2019).

Using the applicable LSI *Laffey* rates, Plaintiffs' counsel have determined that their total fees incurred over the course of this lawsuit amount to $584,041. *See* Elkin Decl. ¶ 7. They provide extensive documentation of their calculations. *See id.* ¶¶ 12–20, Exhibits A–C. The award agreed to by the parties therefore represents an approximate 32% *discount* from what Plaintiffs' counsel could presumptively seek as reasonable. Ms. Elkin further represents that she recorded billed hours contemporaneously and that as much as practicable she ensured that "associates with lower hourly billing rates performed all of the work that they were fully capable

of performing rather than having partners perform such work." *Id.* ¶¶ 9–10. Given these representations about the accuracy of the calculations, the lack of objection to the proposed award, and counsel's acceptance of a considerable discount from the lodestar sum, the Court holds that the award of attorney's fees and costs reflected in the settlement agreement is reasonable and will therefore grant Plaintiffs' motion.

## IV. Conclusion

For all of the above reasons, the parties' Joint Motion for Final Approval of the Settlement, ECF No. 62, and Plaintiffs' Unopposed Motion for Attorney's Fees and Costs, ECF No. 64, will be granted. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 20, 2019